Carroll, }
June 30, 1917. }

RALPH G. CARPENTER *v.* MARGUERITE P. CARPENTER.

The taking of a view in another state by the court of this state as the trier of the facts, to acquire material information obtainable by inspection only, is not so far beyond the jurisdiction of the court as to render all subsequent proceedings including judgment therein void, but, if an irregularity in the trial, is obviated by the consent of the parties or the absence of their objection thereto.

Unless an exception be taken and noted, a ruling is to be accepted as the law of the case: whether an exception was taken is a question of fact for the trial court to find and report.

A decree having been suspended, the case is still before the court and subject to such orders as justice may require.

Ordinarily a decree for divorce may be vacated at any time during the term or before judgment.

In the trial of divorce cases the strict rules of evidence applicable to other actions, are not of binding force.

LIBEL FOR DIVORCE, tried before *Kivel,* J., who at the December term, 1916, of the superior court allowed this bill of exceptions.

The libel alleges adultery as a ground for divorce, committed at
Magnolia, Massachusetts.   Several witnesses for the libelant testi-
fied that about the times alleged in the libel they saw the libelee in
compromising relations with one or more men at Magnolia.   In
reliance upon this evidence the court on July 11, 1916, granted the
libelant a divorce.   At the libelee's request, seasonably filed, the
court suspended the decree for thirty days, and on August 7, 1916,
she filed a motion for a withdrawal of the order of divorce and a re-
argument or rehearing of the question of adultery and other matters.
The ground of the motion was that the witnesses who testified to the
alleged acts of adultery could not see what they said they saw, on
account of the physical situation as it existed at Magnolia, and a
view was suggested.   A preliminary hearing on this motion was
had before the court on August 26.   Subsequently the libelee
submitted affidavits of several persons in support of her motion.
Thereupon the court ordered a view at Magnolia, which was taken
in the presence of counsel for both sides on September 10 and
September 23, when experiments or tests were made to determine
the truth of the statements made by the libelant's witnesses.   After-
wards the court ordered the case reargued upon the question of the
ability of the witnesses to observe what transpired at Magnolia as
they testified, and upon the question whether if their testimony
were stricken out the remaining evidence is sufficient to support the
finding of adultery.   The reargument was had on October 23 and
24 and the case was submitted.   On October 30 a further view was
taken and experiments made.   November 6 the court ordered that
the decree of divorce be vacated and the libel dismissed.   The libel-
ant's bill of exceptions was filed December 12 and on the twentieth
he filed a motion to set aside the decree of November 6, which was
denied, and the libelant excepted.   No other exception was noted
to any of the above described proceedings, previous to the filing of
the bill of exceptions.   Other facts are stated in the opinion.

*W. H. Smart, Michael J. Sughrue, Henry F. Hurlburt* and *Carroll
A. Wilson* (all of Massachusetts) and *Martin & Howe* (*Mr. Hurlburt*
orally), for the libelant.

*Walter I. Badger* (of Massachusetts) and *Streeter, Demond, Wood-
worth & Sulloway* (*Mr. Demond* orally), for the libelee.

WALKER, J.   Many of the questions argued by the libelant are
not properly before the court.   It is ordinarily essential, under our

practice, that parties desiring to litigate questions of law in this court, which were involved in the trial of the case, should unequivocally take an exception to the ruling of which they complain, and that the record should show they did so. A mere objection not. followed by an exception is unavailing. "Under the well established practice of this state, unless exception is taken and noted it is conclusively understood that the ruling is accepted as the law of the case." *Lee* v. *Dow*, 73 N. H. 101, 105; *Story* v. *Railroad*, 70 N. H. 364, 380; *Chesbrough* v. *Company*, 77 N. H. 387. Whether an exception was taken is a question of fact for the trial court to find and report, and argument upon the transfer of a case that an exception was intended to be taken is irrelevant and futile. Consequently the fact that the libelant objected to the granting of the motion for a rehearing and to the taking of a view and to the proceedings thereunder is of no materiality here, since it appears from the bill of exceptions that no exceptions were interposed or allowed to any of the matters now complained of, until the filing of the bill of exceptions December 12, 1916.

But it is argued that although the libelant took no exception to the action of the court in entertaining the libelee's motion for a rehearing of the case, after the decree of July 11, 1916, granting a divorce to the libelant, it is still permissible for him to take the position, that upon the filing of that decree the court's jurisdiction of the case was at an end and hence that the decree of November 6, 1916, vacating the first decree and ordering a dismissal of the bill, was a nullity. One sufficient reason why this position is unsound, even if there were no others, is, that under the practice prevailing in the superior court a decree for divorce like other decrees or verdicts does not become *res adjudicata* and final until the end of the term, when parties are entitled to judgment if the litigation is at an end, or until a special order is made for judgment on a specified date during term time. In Hillsborough county the practice is to regard the first day of each month as judgment day. Whatever the ancient practice may have been in this respect, by which the enrolment of a decree was regarded as a final act, it is not of binding effect when a different practice prevails. As no special day had been appointed when the decree should become effective as a judgment, the case had not been finally disposed of when the rehearing was had and the order made annulling the first decree and dismissing the libel. The case had not been fully disposed of (*Haynes* v. *Thom*, 28 N. H. 386, 399), but was still before the court and sub-

ject to such orders as justice might require. *Adams* v. *Adams*, 51 N. H. 388, 396. It is not true, therefore, as suggested in argument that the *status* of the parties as husband and wife was finally changed the instant the decree of divorce was entered. The court having found that justice required that the decree of divorce should be vacated, its power to make the last decree cannot be doubted.

The distinction between this case and *Folsom* v. *Folsom*, 55 N. H. 78, is obvious. That was an application for a retrial of a divorce case, which had been heard and determined at a former term of court, upon the ground of perjury; and upon the allegations of the petition, it was held that as a matter of law the petition could not be granted. It would hardly be regarded as commendable practice in this state to hold that the court, after having technically entered a decree of divorce, could not revoke it during the term upon being convinced that he had been grossly imposed upon by the libelant and his witnesses. Such practice would be useful for no apparent purpose other than that of promoting injustice, and for that reason it does not prevail in this state. "The notion that when judgment had been given and enrolled no amendment could be made at a subsequent term (3 Bl. Com. 407), was long ago abandoned." *Owen* v. *Weston*, 63 N. H. 599, 603.

It appears, moreover, that the decree of divorce was suspended on July 13 for thirty days from July 12, the day it was entered, in order to permit the libelee to file her motion for a rehearing. While this motion was pending and while the case was being reconsidered and reheard, no suggestion was made by anyone that the power of the court came to an end when the thirty day limitation expired, as is now argued by the libelant. Until the questions raised on the rehearing were determined the case remained open, in accordance with the understanding of the parties, the undoubted intention of the court, and the recognized practice in this state. *Eastman* v. *Concord*, 64 N. H. 263. No question of jurisdiction is involved in this contention, requiring further discussion.

But it is claimed that the libelee's motion for further proceedings after the first decree was entered was in legal effect an application for a new trial, and that by granting the motion the court could only proceed upon that theory and hear the case *de novo*. If it is conceded that a retrial of the whole case might have been ordered by the court after it was convinced that a serious error of fact had been introduced at the first trial, it is clear that such an order was not the only method by which the error could be corrected. *Lisbon* v.

*Lyman,* 49 N. H. 553.    That no misunderstanding might be indulged as to what the court intended to do, if he found that some of the libelant's witnesses had testified falsely at the first trial, upon whose testimony he had relied in concluding that the libelee had committed adultery, the court stated expressly at a hearing as to the scope of the questions presented by the motion, that "I shall vacate my decree and order the libel dismissed if I am satisfied that by a balance of probabilities the libelant has not made out his case." Other remarks by the court were made at the same time of similar import, and no exception or objection was made, on the theory now suggested, that the court could only order a new trial.    It is difficult to understand how counsel could have been misled in this respect or have been taken by surprise, when the court ordered the first decree vacated and the libel dismissed.    It is certain that this court can draw no such inference.    If the exception which the libelant took to the last decree might be held to cover the objection, it must be overruled.

Nor can the question whether the evidence warranted the court in vacating the decree and ordering the libel dismissed be now considered, since it appears that there was not "any claim as to the insufficiency of evidence to warrant a reconsideration of the first decree and dismissal of the bill made, until December 20, 1916," several days after the last decree was entered.    To have the benefit of an exception upon that ground it must be taken before the case is submitted: otherwise the objection is deemed to be waived. *Head & Dowst Co.* v. *Breeders' Club,* 75 N. H. 449; *Moynihan* v. *Brennan,* 77 N. H. 273.

Perhaps the principal contention of the libelant is in support of the proposition that the court in taking a view in Massachusetts attempted to perform judicial acts which for want of territorial jurisdiction were absolutely void, and that it is immaterial whether the libelant excepted to that procedure or not, since absolute want of power is not remedied by consent, and may be taken advantage of at any time during the trial or subsequently by collateral attack. While it is true that when it appears a court has no jurisdiction of the subject-matter of a suit, the proceeding will be dismissed, even if no objection is made (*Burgess* v. *Burgess,* 71 N. H. 293), the question is whether the taking of a view in another state is so far beyond the jurisdiction of the court that it renders all subsequent proceedings in the case, including the verdict and judgment, absolutely void, or whether it is at most merely an irregularity in the trial, which

is obviated by the consent of the parties, or by the absence of objection and exception thereto. The solution of this question depends very materially upon the object or purpose of a view. If it is to transfer the trial with all its incidents to the place to be inspected, little doubt would arise that it could not for many reasons take place outside the state; but if it is merely to enable the jury or the trier of the facts to acquire some special information material to the case, by inspection alone, that could not be conveniently or satisfactorily presented in the court room, the fact that the inspection in the absence of the court occurred in another state would seem to have little legitimate bearing on the power of the court to try the merits of the case. Whether a referee or master or a judge may conduct a trial, in whole or in part, outside the state, it is unnecessary to decide. Many instances of such procedure have occurred apparently by consent of the parties.

In some sense, the purpose of a view is the acquisition by the jury of a special and restricted kind of evidence, which, the trial court in its discretion, finds may be of use to the jury in reaching a verdict. The jury are not sent out to get evidence generally, or to examine physical facts not authorized in the order. They do not hear oral testimony, no witnesses are examined, no arguments are made. They merely see such physical objects as are properly shown to them, and receive impressions therefrom. They get a mental picture of the locality, which as sensible men they carry back to the court room and use in their deliberations as evidence. It would therefore be senseless to say that in this restricted sense the information thus gained by actual inspection is not evidence, which the trier of the fact is authorized to use in reaching a verdict, and which counsel are entitled to comment upon in argument. The acquisition of such evidence does not depend upon the oaths of witnesses, is not tested by cross-examination, and presents no questions of law calling for a ruling of the court on the grounds of admissibility or relevancy. The court as such has no function to perform when such evidence is presented, for it depends entirely upon the jury's ability to observe what is pointed out to them. No trial is had while the view is in progress; and the court is not in session at the place of the view for the trial of the case. The procedure by which special evidence of the character indicated becomes available, is in fact based upon a useful rule of necessity, without which much valuable information clearly bearing upon the trial of cases would be withheld from the tribunal charged with the

duty of deciding the facts.   It provides a method by which evidence of a peculiar and restricted character may be obtained in the absence of the court and without the observance of the rules deemed essential in the production of evidence given in court.   It may not be inaccurate to say that while this procedure is anomalous it is justified in fact as a necessary exception to the general rule that evidence must be produced in court subject to numerous judicial restrictions and directions.

There is much apparent conflict in the language used by courts in defining the object or purpose of ordering or permitting views to be taken.   In some of the authorities it is said that a view is, in no proper sense, intended to furnish evidence, but to afford a means by which the jury can better understand and apply the strictly legal evidence already in the case or to be thereafter submitted.   This restrictive language is derived from the statute of 4 & 5 Anne, *c.* 16, *s.* 8, whereby, in the discretion of the court, jurors may be ordered to take a view of the "place in question, in order to their better understanding the evidence that will be given upon the trials of such issues."   Similar expressions occur in the statute law of many of the states.   In this state the statute provides that: "In the trial of actions involving questions of right to real estate, or in which the examination of places or objects may aid the jury in understanding the testimony, the court, on motion of either party, may, in their discretion, direct a view of the premises by the jury, under such rules as they may prescribe."   P. S., *c.* 227, *s.* 19.   It is not clear how this distinction proves the proposition that the information derived from a view is not for all practical purposes evidence, or that it is not as much evidence as similar information conveyed by an inspection of a physical object exhibited to the jury in court.

Other authorities hold that the information obtained by the jury upon a view is as much evidentiary in its character as the sworn testimony of witnesses regularly received in court, while still other courts regard it as evidence to be considered like sworn testimony, subject to the qualification that alone it is not sufficient to support a verdict.   For cases in support of these differing opinions see note in 42 L. R. A. 385.   While the purpose of a view is not to obtain evidence in the broad sense of that term, or to permit the jury to use their power of observation while taking a view to discover material facts not apparent from the actual situation of the things under observation, it is difficult to understand why the impressions made upon their minds by an inspection of a physical

object regularly pointed out to them, should not be permitted, in a legal sense, to have the force of evidence, when as a matter of simple mental reasoning honest jurymen could reach no other result. If the object is black when seen by the jury it would be absurd to expect them to find that it was white, in the absence of evidence indicating that they had been imposed upon. An instruction that although they knew from an authorized observation of it that it was black, they could not as a matter of law find it was of that color, because they had no legal evidence of it, would strike the ordinary mind as a strange and unreasonable doctrine, based upon a refinement in legal reasoning subversive of the just and practical administration of justice. "There is no sense in the conclusion that the knowledge which the jurors acquire by the view is not evidence in the case." 1 Thomp. Trials, *s.* 893; 2 Wig. Ev., *s.* 1168; *Tully* v. *Railroad*, 134 Mass. 499; 7 Enc. Pl. & Pr. 581. There is little merit in the contention that the libelant had no means of knowing what impressions the evidence produced by the view had upon the justice, and hence that no way was open to meet or explain them; for this is equally true when a jury takes a view in the usual course of procedure.

A more extended discussion of this subject or a critical examination of the cases outside this jurisdiction which seem to be germane is unnecessary, because the unquestioned practice in this state, shown by the cases, is determinative of the question. A view is one means of obtaining a certain class of evidence. Information thus acquired by the jury, which is material to the issue and necessarily involved in the subject-matter of the view, has been recognized as evidence in the following cases among others, without a suggestion that its use as such was open to doubt. *Cook* v. *New Durham*, 64 N. H. 419, 420; *Concord Land & Water Power Co.* v. *Clough*, 70 N. H. 627; *Flint* v. *Company*, 73 N. H. 483, 485; *Lane* v. *Manchester Mills*, 75 N. H. 102, 106; *City Bowling Alleys* v. *Berlin*, 78 N. H. 169, 170; *Osman* v. *Company, post.*

Nor is it important to inquire whether the power of the court to order an inspection of objects located at a distance from where the trial is had, is an inherent and necessary power of the court under the common law, or whether it is derived from the statute or whether it may be justified on both grounds in conjunction, since whatever theory is adopted as a matter of historical investigation, no one can question the existence of the power in this state or successfully contend that it does not afford a reasonably convenient

method of securing essential and material evidence. "If the established practical ·construction is theoretically wrong, the case is one of a class in which it is proper to act upon the maxim that common opinion and common ·practice may be accepted as conclusive evidence of what the law is." *Tyler* v. *Flanders*, 58 N. H. 371, 373; *Gleason* v. *Emerson*, 51 N. H. 405.

The argument is presented that the statute does not authorize a judge when trying a. case without a jury to take a view, and that the common law does not permit such procedure. In short, the position is, that he has no jurisdiction to take a view, however. important such procedure· may be in the particular case. But the discussion of that proposition, which is in direct conflict with the uniform practice in the courts of this state since the foundation of the government, under the statute, or under the common law, would be of no practical use. The triers of facts, whether the court, referees, or masters, as well as juries, have been permitted in accordance with the principle of utilizing the best inventible procedure, to view material objects in order to ascertain the truth. See *Adams* v. *Bushey*, 60 N. H. 290, where a referee took a view in the absence of the parties, and the report was sustained. A contrary doctrine would seem to rest upon the most technical and unsatisfactory reasoning. A judge when taking a view acts simply as a trier of facts,—he is *pro hac vice* the jury. See *Fowler* v. *Towle*, 49 N. H. 507, 523; P. S., c. 204, ss. 8, 9.

But it is argued, with great apparent confidence, that the judge exceeded his territorial jurisdiction when he took the view in Massachusetts. It must be borne in mind that he did not hold court or try the case in that state. When he was there the court was in recess. And so far as the argument is based upon that assumption it is clearly fallacious as shown above. It cannot be supported upon that ground, unless when a view is taken by the jury it is correct to say that the trial is transferred to the locality inspected, although the presiding justice is not present, no testimony is taken, and none of the usual and necessary methods incident to a trial are observed. A legal trial in common law countries presupposes and is predicated upon the presence of a presiding justice under whose. directions the case is tried. If no such person is present, it would be a clear misnomer to say that there could be a legal trial. *People* v. *Thorn*, 156 N. Y. 286. There was no attempted trial of the case in Massachusetts. All that the judge did was to go to Magnolia without the objection of the libelant, as the

record shows, and in the presence of the parties or their attorneys observe the situation of the premises in its bearing upon the disputed question, whether witnesses who had testified for the libelant could see the libelee in certain locations about the hotel from the positions they said they occupied. This act, it is urged, he had no jurisdictional power to do; and authority to do it could not be conferred by the consent, waiver or express request of the parties, and hence that the fatal effect of such an act may be taken advantage of without a formal exception. While it is true that the jurisdiction of a court of the subject-matter of a suit when it exists is alone conferred by the law and its absence may be taken advantage of at any stage of the proceedings, and if it is conceded that a court cannot exercise its judicial functions outside the prescribed limits of its jurisdiction, the inquiry is whether the justice when he made the inspection at Magnolia was exercising a judicial power that he could only exercise in New Hampshire. Did the prescribed territorial limits of the superior court for Carroll county in the trial of causes, preclude him as the trier of the facts in this case from taking a view at a point beyond those limits?

It cannot be successfully maintained that this doctrine of jurisdiction is so inelastic as to render a view ordered by the court of one county to be taken within the limits of another, void for want of territorial jurisdiction. Where both parties were residents of Grafton county and the suit was brought in Belknap county, the trial in the latter county was not arrested when the jurisdictional irregularity was shown on defendant's motion for a change of venue. The decisive question in that case was what justice required under the circumstances. It was not treated as a fundamental question of jurisdiction. *Whitcher* v. *Association*, 77 N. H. 405. In *Wheeler & Wilson Mfg Co.* v. *Whitcomb*, 62 N. H. 411, and in *Bishop* v. *Company*, 62 N. H. 455, the bringing of an action in a wrong county was not regarded as such a serious defect that it could not be transferred to the proper county. The irregularity was capable of being obviated. Reasonable procedure justified such action. *St. Louis &c. Ry Co.* v. *McBride*, 141 U. S. 127. If the case of *Little* v. *Dickinson*, 29 N. H. 56 is in conflict with these cases it must be regarded as overruled by them. Indeed, in the present case the trial which lasted many days was held in Merrimack county for the convenience of all parties concerned, without objection or dissent by any one.

In *Kimball* v. *Fisk*, 39 N. H. 110, proceedings for the appointment

of a guardian of an insane person were held by the judge of probate upon days other than those specified by the statute for the holding of the probate court, and in holding that the acts of the judge were legal, the court said (*pp.* 122, 123): "If it should be regarded as irregular that business should be done by the judge of probate on days not appointed by the law, still this is hardly to be regarded as a matter affecting the jurisdiction of the court over the subject-matter. If the proceedings would be set aside on motion, seasonably made in the probate court, or in this court on appeal, still the court has not acted beyond its jurisdiction. The defect is not one necessarily fatal, since it may be waived or released; and consequently, so long as the proceedings remain, and are not set aside on motion or appeal, all parties are bound by them, and they cannot be treated as nullities, when they are incidentally brought in question." The question was not one of the power of the court to act upon the subject presented, but of its power to act at a particular time. It was a question of procedure and not of jurisdiction. A similar illustration is furnished by *Harris* v. *Parker*, 66 N. H. 324, where it was claimed that the appointment of a commissioner in insolvency was unauthorized; but the appellants having submitted their claims to him with a full knowledge of the facts were held to have waived their right to object to the appointment made by a court having jurisdiction of the subject-matter. See also *State* v. *Richmond*, 26 N. H. 232, 243; *Bruce* v. *Cloutman*, 45 N. H. 37; *Rowe* v. *Page*, 54 N. H. 190, 196; *White* v. *White*, 60 N. H. 210; *Lombard* v. *Company*, *ante*, 280; *Sanderson* v. *Nashua*, 44 N. H. 492. It may be said that these cases are not directly in point and do not establish the rule that a view may be properly taken in another state. They show, however, that many defects of a jurisdictional character are not fundamental, since they may be obviated by the consent or the waiver of the parties, and that it is not true in an unqualified sense that jurisdiction may not be acquired by consent, or that when jurisdiction of the subject-matter and the parties is once acquired, it will be lost by methods of procedure in the trial, which justice clearly requires. If, in order to ascertain the truth upon a material issue, the judge deemed it important that, as the trier of the fact, he should personally inspect the relative position of houses and other physical objects located in Massachusetts, it is not perceived why it should be held that he was absolutely precluded from doing so, because the case was pending within the territorial limits of New Hampshire. If, while trying a case in one county he

can order the jury to take a view in another county, or take a view himself in another county in a case tried without a jury—a well recognized practice—why is he or the jury entirely disqualified to perform the same act across the geographical boundary line in another state? The only suggested answer is, that it is inherently impossible for a court to try cases beyond the territorial limits of its jurisdiction. This argument is based upon the false assumption that a view is equivalent to a judicial trial, while it is apparent that the trial is in fact suspended in order that a view may be taken. The presiding justice does not often accompany the jury on a view; no sworn evidence is received and no arguments are made. A view therefore is a method of procedure conducted in the absence of the court as an aid in the ascertainment of the truth from the physical act of inspection, which does not require the exercise of the judicial powers of a court at the time for its proper performance. If such is a correct exposition of a view when taken within the state, its essential character remains when it occurs without the state. The territorial jurisdiction of the court is as fully preserved, as it is when the court admits the testimony of a civil engineer as to physical conditions observed by him in another state, or where maps, plans and photographs are introduced for the inspection of the jury. If for any reason such a view is an irregularity it may be waived and was waived in this case. See authorities *supra*.

The numerous cases referred to by the libelant, which it is claimed sustain his contention, are not of convincing importance. The most of them relate to orders made beyond the limits of the jurisdiction, which were held to be of a judicial character, and many of the cases, upon that question even, are open to serious doubt; as, for instance, the case of *Dunlap* v. *Rumph*, 43 Okla. 491, where it was held that a judge could not approve and sign a "case-made" while he was in Chicago, although the parties agreed that it was correct and that it should be approved by him in that city; in *Price* v. *Bayless*, 131 Ind. 437, it was held that a judge cannot issue a restraining order while he is in Michigan; in *Shaw* v. *Spencer*, 57 Wash. 587, that a judge cannot hear a motion for a new trial in another county; in *Buchanan* v. *Jones*, 12 Ga. 612, that the granting of a writ of *certiorari* outside the state is a void act; in *Adams* v. *Kyzer*, 61 Miss. 407, that the chancellor for one district has no power to hear and determine a motion to dissolve an injunction in another; in *Share* v. *Anderson*, 7 S. & R. 42, that a justice of the peace cannot take the acknowledgement of a deed in a county

for which he was not appointed, but see *Odiorne* v. *Mason*, 9 N. H. 24; in *Rainey* v. *Ridgeway*, 151 Ala. 532, that an order of a judge of probate extending the time for signing a bill of exceptions is void when made outside the limits of his jurisdiction, and in *Lee* v. *Wells*, 15 Gray 459, that a judge of probate cannot issue a warrant of insolvency while in another county. Some of the cases depend upon a construction of special statutes. *Ex parte Parker*, 6 S. C. 472; *Phillips* v. *Thralls*, 26 Kan. 780; *Rockford &c. R. R.* v. *Coppinger*, 66 Ill. 510. The case of *State* v. *Hawthorn*, 134 La. 979, 984, was an indictment for stealing a bull, and it was deemed important by both parties that the jury should see the animal which at the time of the trial was across the river in the state of Mississippi. The court denied the request of both parties for a view, and upon appeal it was held that no error appeared, the court saying: "The jury, as such, could not have exercised its functions in another state, where also it would have been beyond the supervision and control of the court." While the case might have been put upon the ground that the trial court properly exercised its discretion in denying the request, the reason given in the opinion is not convincing, since the only function the jury could exercise in Mississippi was that of seeing the bull, and whether, while performing that simple act, the immediate supervision of the court would be necessary, is not apparent. It is evident that the foregoing cases have little bearing upon the present case, in which the trial court did not make any judicial orders or conduct any part of the trial in another jurisdiction.

It might be interesting to compare the cases above referred to with other cases where a more liberal practice seems to prevail, as, for instance, *Bate Refrigerating Co.* v. *Gillette*, 28 Fed. Rep. 673, where it was held to be the universal practice to permit a master to act outside the territorial jurisdiction of the court and to take testimony in foreign countries. This was followed in *Consolidated Fastener Co.* v. *Company*, 85 Fed. Rep. 54. In *People* v. *Thorn*, 156 N. Y. 286, it was held that a view by a jury of the premises where the crime was committed is not a part of the trial in such a sense, that it could not be taken in the absence of the respondent. If an action is brought in a wrong county, the error is not fatal. With the consent of the parties the trial may proceed. *Bishop* v. *Company*, 62 N. H. 455. But see *Malins* v. *Dunraven* (1845), 9 Jur. (Rep.) 690, which is not a satisfactory or convincing decision.

If it were determined that for some jurisdictional reason a New

Hampshire jury is disqualified to take a view outside the state, and that all subsequent proceedings in the case before the same jury are absolutely void, though no one raises an objection on that ground, much surprise would undoubtedly be created among the resident members of the profession; for the practice has prevailed in this state by common consent and approval for many years. And the fact that the question has not been raised or discussed in any of our reported cases is cogent evidence that it has not been deemed to be debatable. *State* v. *Sawtelle*, 66 N. H. 488, was an indictment for murder in the first degree, in which the respondent was convicted and sentenced to be hanged. Able counsel defended him and took and argued various exceptions which were overruled. The trial was presided over by Chief Justice Doe and Associate Justice Bingham and during its progress the jury were sent into the state of Maine to view localities which it was claimed were material to the issue on trial. No one seemed to have entertained a doubt of the propriety or legality of the proceeding; no objections were interposed to it. If it had been understood that the fundamental jurisdiction of the court was lost or suspended in consequence of the view, it is unaccountable that in a case of such importance the objection was not suggested or entertained by any one connected with the trial. Numerous other instances have been called to our attention where juries have taken views outside the state with the consent of the parties; in fact, it is not inaccurate to say that it is the general practice in this state, whenever the court deems it useful and no objection is interposed. Whether it is an irregularity in procedure for the reason that the court has no extra-territorial power and may not be able to compel the parties and the officers in charge of the jury to go outside the state, is not a question determinative of its power to try the case and render judgment therein, after an extra-territorial view has been taken with the consent of the parties.

"Where a court has jurisdiction of the cause and the parties, and proceeds erroneously, the judgment, notwithstanding the error, is binding until it is vacated or reversed. This distinction is well settled." *Smith* v. *Knowlton*, 11 N. H. 191. "When it is once made to appear that a court has jurisdiction both of the subject-matter and of the parties, the judgment which it pronounces must be held conclusive and binding upon the parties thereto and their privies, notwithstanding the court may have proceeded irregularly, or erred in its application of the law to the case before it. It is a

general rule that irregularities in the course of judicial proceedings do not render them void." Cool. Con. Lim. (7th ed.) 587. "Irregularities, which is but another word for illegalities, in the proceedings in an action, furnish everywhere ground of exception to the party whose rights are affected by them, and the irregular proceedings are at once set aside, on motion of the proper party. But it is a general rule, that if a party who has ground to move the court to set aside any process or proceeding of any kind, neglects to make his application in a reasonable time, after the facts have come to his knowledge, he is deemed to waive the exception by the delay, and will be forever precluded to make the objection afterwards." *State* v. *Richmond,* 26 N. H. 232, 243. See also *Sanderson* v. *Nashua,* 44 N. H. 492; *Kimball* v. *Fisk,* 39 N. H. 110; *State* v. *Buzzell,* 59 N. H. 65; *State* v. *Albee,* 61 N. H. 423, 428; *State* v. *Almy,* 67 N. H. 274, 280. "If the court does not possess the legal power to decide the question involved, then jurisdiction cannot be acquired by consent." Brown Juris., s. 47; *Hobart* v. *Frost,* 5 Duer 672; *Smith* v. *Knowlton,* 11 N. H. 191; *Morse* v. *Presby,* 25 N. H. 299; *Crowell* v. *Londonderry,* 63 N. H. 42; *Warren* v. *Glynn,* 37 N. H. 340; *Bickford* v. *Franconia,* 73 N. H. 194; *Hutchinson* v. *Railway,* 73 N. H. 271, 276; *Fowler* v. *Brooks,* 64 N. H. 423; *State* v. *Shattuck,* 45 N. H. 205; *Voorhees* v. *Bank,* 10 Pet. 449, 473; 1 Black Judg. (2nd ed.) s. 244.

As it appears from the bill of exceptions that the libelant took no exception to the granting of the libelee's motion that the court take a view of the premises in Massachusetts, he waived his right to object to such procedure, even if it is conceded that it was what is termed an irregularity. And as the territorial jurisdiction of the court was not lost or impaired by the view, in such a sense that no exception would be necessary to bring the matter to the attention of the court, the contention of the libelant upon this point is unavailing.

Whether there were irregularities at the view cannot be considered at this stage of the case, in the absence of any objection and exception thereto. It has been argued that certain experiments were resorted to at the view which were improper and ought not to have been made. As no objection was made to that practice until after the decree was entered, the argument is superfluous. But upon the question of the legality of experiments made while a view is being taken see *Flint* v. *Company,* 73 N. H. 483, 485; *Concord Land &c. Co.* v. *Clough,* 70 N. H. 627. The claim that the libelant

had no opportunity to take the necessary exceptions except while the court was in Massachusetts and without power to act judicially is without merit, since he could have applied to the court in this state within a reasonable time for the allowance of his exception. He was not prevented from making the attempt.

Several affidavits of persons who had examined the premises at Magnolia to the effect that it was physically impossible that witnesses for the libelant could have seen what they testified they saw, were introduced in support of the libelee's motion for a rehearing, and it appears from the bill of exceptions that the court considered them in connection with the experiments made at the view. But it does not appear that they were considered as independent evidence. So far as the view demonstrated that the statements were true it is not apparent what substantial error was committed. Moreover, it is to be noted that in the trial of divorce cases "the court has never been governed by strict rules of evidence or practice, and has always exercised a broad discretion, as well in the admission of evidence as in other respects." *Warner* v. *Warner*, 69 N. H. 137, 138. In accordance with this principle, if for no other reason, the exception to the use made of the affidavits by the court must be overruled.

Several exceptions to the evidence were regularly taken at the original trial and are now insisted upon. But they do not appear to be of sufficient importance to warrant extended discussion, especially in view of the fact that the strict rules of evidence are not applicable to divorce trials. *Warner* v. *Warner, supra.*

It appears that petitions to the probate court for Carroll county have been filed asking for the appointment of a guardian of the minor son of the parties, and that subsequently the libelee filed in the superior court a petition for legal separation and maintenance, and for the custody of her minor son. By agreement of the parties the question is transferred in this case whether the probate court has authority to appoint a guardian over the minor son pending a decision upon the petition filed in the superior court. No orders upon these petitions have been made in either court. The probate court has not appointed a guardian, nor has the superior court appointed a custodian. That the probate court has power generally to appoint a guardian of a minor "whenever there is occasion," of both his person and estate (P. S., *c.* 178, *ss.* 1, 6) is not denied; nor is it denied that the superior court in a divorce proceeding may appoint a temporary or permanent custodian of a child of the parties. P. S., *c.* 176, *s.* 4; Laws 1907, *c.* 31. What-

ever distinction there may be between the powers and duties of a guardian and those of a custodian, under the statutes, it is clear that it was the purpose of the legislature to authorize the superior court to appoint the latter in a divorce proceeding. If the probate court should, as it probably would, appoint the same person as guardian, the contentions of the parties upon this subject would doubtless be ended; and the same result would be reached, if the probate court should appoint a guardian deemed by the libelee to be unfit for the trust, since upon appeal to the superior court the matter of guardianship would be finally determined as well as the question of custody. In this view of the matter it is not advisable to decide at this time the question, which is somewhat irregularly presented, as it may become of no practical importance to the parties.

*Exceptions overruled: libel dismissed.*

All concurred.