## THE MUTUAL BENEFIT LIFE INSURANCE COMPANY vs. ROWAND and others.

1. The excavation for the foundation is "the commencement of the building," within the meaning of the mechanics' lien law.

2. This excavation is the constructive notice intended by the legislature to all who might propose either to purchase or to acquire liens upon the property; and it makes no difference that the excavation is made by the owner himself, or under his direction, and not under a contract.

3. A mortgage recorded, but held by the mortgagor ready for delivery when he should obtain a loan—*held*, not to have been recorded, so as to be notice as against lien claimants, until the day when the loan was made and the mortgage delivered.

4. The advancing of the money by the mortgagee upon a mortgage recorded before its delivery, will not be held to relate back to the date of execution, acknowledgment, or registry of the mortgage, where the rights

of encumbrancers have intervened, in the absence of any antecedent agreement for the loan, and where the making of the loan was not in any wise dependent on the fact of the registry of the mortgage.

5. The mechanics' lien law does not, in terms, authorize a judgment against the building and land where there has been *actual* service (as contradistinguished from *legal* service) of the summons, but it does so by necessary implication, and the obvious and undeniable necessities of construction; hence, a judgment against the land, entered in a suit upon a lien claim, is not rendered invalid by reason of actual service of the summons; and a special *fieri facias* issued thereon is lawful.

6. A mortgage, recorded on the 13th day of May, 1870, was not delivered until the 7th of June following, which latter date was held to be the date of its registry. A building was commenced on the mortgaged premises, on the 28th of the same month of May. Lien claims were filed therefor, and judgments obtained on suits commenced thereon. *Held*, that the lien claims not filed until more than a year after the recording of the mortgage, were not postponed to the encumbrance of the mortgage, by the 11th section of the lien law, (as it stood when the claims were contracted,) which limited the lien to the estate which the owner had within one year before the filing of the claim.

7. An architect, who draws the plans, and superintends and directs the construction of a building, has a valid lien for his services.

8. The service of summons on a lien claim was defective. A new summons was issued more than a year after the furnishing of the labor and materials. *Held*, the service of the new summons was valid and effectual, and the claim good.

---

Bill to foreclose. On final hearing, on pleadings and proofs.

*Mr. F. K. Howell*, for complainants.

*Mr. R. S. Green*, for L. A. Jacobus.

*Mr. W. P. Wilson* and *Mr. B. Williamson*, for E. H. Purdy & Co., lien claimants.

*Mr. E. S. Atwater*, for Thomas Thompson.

*Mr. C. F. Hill*, for Wyllys H. Warner.

THE CHANCELLOR.

The questions in this case arise between the holder of the second and third mortgages on the property and the lien

claimants, as to the priority of these mortgages, or either of them, over the lien claims, and as to the allowance of the lien claims of Thompson, the architect and superintendent, and Warner, who furnished and put in the heating apparatus. The premises are what is known as "Dimock's brown stone house" and lot in Elizabeth. The land was owned, when the building was begun, (which was in 1870,) by Mrs. Dimock. She and her husband conveyed it, in 1873, to the defendant, Rowand. The complainants' mortgage is the first encumbrance on the property, and is in no wise questioned. The defendant, Lyman A. Jacobus, holds two mortgages on the premises; one for $60,000, dated May 2d, 1870, acknowledged the 4th, and recorded on the 13th of the same month; the other, for $20,000, dated the 18th of March, 1871, acknowledged on the 20th, and recorded on the 21st of that month. The lien claimants insist that their claims are entitled to priority over the Jacobus mortgages, because those mortgages were, in fact, both taken, as they insist, after the commencement of the building. The building was begun in 1870. The mortgage for $20,000 was not taken until 1871. The mortgage for $60,000 is, as before stated, dated May 2d, 1870, was acknowledged on the 4th, and recorded on the 13th of that month. The proof is, that the excavation for the foundation of the house was begun on the 28th of that month, and that the work of building the foundation was commenced on the 16th of June following. It appears, however, that that mortgage was not delivered until the 7th of June, 1870. The mortgagee insists that the commencement of the building should be held to be the beginning of the erection, strictly speaking, and therefore that the excavation for the foundation ought not to be so considered. The legislature intended to make the actual and visible commencement of the building, notice to all who might propose either to purchase or acquire liens upon the property. The commencement of actual operations on the ground for the erection of a building, is constructive notice to all such persons of the claims which those who may contribute work or materials for the building, may thereafter make against the property by virtue

of the mechanics' lien law. The excavation for the foundation is such notice, and it makes no difference that the excavation is made by the owner himself, or under his direction, and not under a contract. The excavation for the foundation is the " commencement of the building," within the meaning of the law. *Pennock* v. *Hoover*, 5 *Rawle* 291 ; *Brooks* v. *Lester*, 36 *Maryland* 65. In the former of these cases, the court say, that it may safely be considered the universal understanding as to what constitutes the commencement of the building of a house, that it is the first labor done on the ground which is made the foundation of the building, and to form part of the work suitable and necessary for its construction. In the latter case, the court say, that what the law means by the term, " commencement of the building," is some work and labor on the ground, the effects of which are apparent, such as beginning to dig the foundation, or work of like description, which every one can readily see and recognize as the commencement of a building. Where, as in this instance, the whole work of building was done " by the day," by persons employed by the owner for the various parts of the work; there is no foundation for the discrimination sought to be made in this case between the excavation for the foundation and the building of the foundation. Had any workman or materialman, looking, as he had a right to look, at the security to be afforded him by law, ascertained that the excavation for the foundation was commenced on the 28th of May, and that the mortgage for $60,000 had not been recorded (if such had been the fact) until the 7th of June following, he would have been justified in regarding the mortgage as having been recorded subsequently to the commencement of the building. That mortgage was not delivered until the 7th of June, the day on which the mortgagee gave his check for the money. It must be considered as not having been recorded before that day. *Freeman* v. *Schrœder*, 43 *Barb.* 618. The lien claims are therefore entitled to precedence over those mortgages, unless one of the following propositions of the counsel of the mortgagee be

true: first, that the advancing of the money on the 7th of June will have relation back to either the date of the mortgage, or to the time of the acknowledgment, or to the time of recording the mortgage; second, that the mechanics' lien law does not authorize a judgment against the land in any case where actual service, as contradistinguished in the act from "legal" service, of the summons in the suit on the lien claim is obtained; and therefore, inasmuch as in the suits by the lien claimants who have appeared in the cause, they all obtained actual service of summons, judgment against the land could not lawfully have been entered in those suits, and consequently no special *fieri facias* could lawfully be issued on any of them; and third, that the statute, as it stood when these claims were contracted, limited the lien to the estate which the owner had within one year before the filing of the claim in the clerk's office; and therefore, inasmuch as the lien claims of those claimants who have appeared in the suit were not filed until more than a year after the recording of either of the mortgages in question, the encumbrance of those mortgages is superior to that of those claims.

As to the first of these propositions: the mortgage of $60,000 was not delivered until the 7th of June, when the money was advanced. Mr. Jacobus says that when it was handed to him, he gave his check for the money. Up to that time it was no lien as against any one. It had no validity. It had been executed and put on record, not only in the absence of any agreement between the mortgagor and mortgagee for the loan, but without the knowledge of the latter. The considerations which would give the mortgage relation back to its date as between mortgagor and mortgagee, are not applicable to the question between the present parties litigant. They are all encumbrancers. The mortgagee claims priority by virtue of the constructive notice of the record of his mortgage; the lien claimants, by virtue of the constructive notice of the commencement of the building; and the latter are entitled to all the protection and advantages

to which they would have been entitled if they had been mortgagees under a mortgage recorded simultaneously with the commencement of the building.

The making of the loan was not, in any wise, dependent on the fact that the mortgage had been recorded on the 13th of May, nor does there appear to have been any reference made to the circumstance. The transaction in which these two mortgages, held by Mr. Jacobus, originated, was a purchase of stock and bonds by Mr. Dimock, of Frederick Butterfield, the lending of the money being dependent on the purchase by Dimock of the stock and bonds. Mr. Dimock says, on this head : " Mr. Frederick Butterfield said he could obtain the money for me, or could lend it to me, I forget which, provided I purchased of him certain securities ; which I did, and received from Mr. Butterfield a check for $80,000 ; by whom drawn I do not recollect ; my simple impression would be that it was Mr. Jacobus' check, but I have no recollection of it." Mr. Jacobus was Butterfield's partner in business. The purchase of the stock and bonds by Dimock from Butterfield was the condition on which the loan was made. The loan was secured by the $60,000 mortgage and two thousand shares of Atlantic Mail stock, belonging to Dimock, which, at the time of the delivery of the $60,000 mortgage, Jacobus held. The mortgage for $20,000, with another mortgage, was afterwards given in exchange for that stock. The transaction between Dimock and Butterfield appears to have been the purchase, by the former from the latter, at certain rates, of Quincy and Toledo Railroad bonds, to the nominal amount of $40,000, worth then, in the market, only from 84 to 85 per cent. ; three hundred shares of the stock of the Tenth National Bank, in the city of New York, worth, at that time, $110 a share, and one hundred shares of Atlantic Mail stock, worth then $25 a share. The market value of this property was about $70,000. Dimock agreed to take it from Butterfield at $81,000, provided the latter would obtain a loan of $80,000 for him. The loan was entirely dependent on the purchase of the stock and bonds at the price of $81,000. It

appears to have been substantially, a transaction in which Dimock agreed to purchase securities from Butterfield, at $81,000, if the latter would take a mortgage for $80,000 of the amount. And if it be conceded that, as to Mr. Jacobus, though he was Butterfield's partner, the loan was a transaction wholly independent of the purchase of the bonds and took by Dimock, it nevertheless is extremely clear, that his acceptance of the mortgage of $60,000 was in no wise on the faith of its having been recorded at a date anterior to the time of delivery. The mortgage for $60,000 cannot be held to have relation back to a date prior to the 7th of June.

As to the second proposition : the act does not, in terms, authorize a judgment against the building and land where there has been actual service of the summons, but it does so by a necessary implication, and the obvious and undeniable necessities of construction. It provides, that " when both a general and special judgment shall be given," (and a general judgment can only be entered where there has been actual service,) " both writs" (common and special *fieri facias*,) " may be issued, either separately or combined in one writ, and one may be issued after the return of the other, for the whole or residue, as the case may require."

As to the last proposition : the 11th section of the mechanics' lien law, as it stood before the revision, provided that the deed given by the sheriff, pursuant to a sale under a special *fieri facias*, should convey the estate in the lands which the owner had at, or at any time after, the commencement of the building, within one year before the filing of the claim in the clerk's office, subject to all prior encumbrances, and free from all encumbrances or estates created by or obtained against such owner afterwards, and from all estates and encumbrances created by deed or mortgage, made by such owner, and not recorded or registered in the office of the clerk of the county, at the commencement of the building. What the legislature intended by the words of limitation, " within one year before the filing of such claim in the clerk's office," is not apparent. In the revision, they have been omitted :

and the section, as revised, provides, that the deed shall convey to the purchaser the estate which the owner had in the lands at the commencement of the building, or which he subsequently acquired, and also in the building, subject only to all mortgages and other encumbrances created and recorded, or registered, prior to the commencement of the building; such prior liens to have priority to all subsequent builders' liens upon the lands, and the erections thereon, except such as may be removable, as between landlord and tenant, which may be sold and removed by virtue of any building lien for the construction of the same, free from such prior encumbrances.

The apparent limitation above mentioned, in the original lien law, has reference to the estate of the owner in the lands. A consideration of the whole of the provision leaves no room for doubt as to the construction, in reference to grants made and encumbrances created by the owner after the commencement of the building. The act expressly provided that the deed should convey the estate to the purchaser, subject to all prior encumbrances, and free from all encumbrances or estates created by or obtained against such owner "afterwards," and from all estates and encumbrances created by deed or mortgage made by the owner or any claiming under him, and not recorded or registered in the office of the clerk of the county at the commencement of the building. The Jacobus mortgages are not only both encumbrances, created by the owner after the commencement of the building, but both must be regarded as having been recorded after that time; for the recording of the mortgage of $60,000 must, under the circumstances, be held to have been simultaneous with the delivery, and, therefore, after the commencement of the building.

The objection made to the lien claim of Thompson is not valid. The entire work to the building was done, as before stated, by day's work, by persons employed by the owner. Thompson was the architect who drew the plans and superintended the entire work of construction. For this service he was, as he testifies, to be paid two and a-half per cent. on the estimated amount of the cost of the work, which was

agreed between them to be $75,000. His bill of particulars, attached to his claim of lien, is sufficiently specific. His claim is within the letter and the spirit of the mechanics' lien law. The act gives a lien to "any person for labor performed or materials furnished for the erection and construction of the building." The man who draws the plans, and superintends, and directs the construction, is clearly within the provision. *Phillips on Mechanics' Liens*, § 158; *Bank of Penn.* v. *Gries,* 35 *Penn.* 423.

The summons issued on Warner's claim was duly issued within a year from the date of the furnishing of the last of the labor and materials for which the claim was filed, and the time of issuing the summons was duly endorsed on the claim. It appears, however, that the service of the summons on Mr. and Mrs. Dimock was defective. An order was obtained for the issuing of a new summons; not, however, until more than a year after the date of the furnishing of the last of the labor and materials. The supplement to the practice act, (*Nix. Dig.* 755, § 1,) provides for the issuing of a new summons under such circumstances, and that the service of the new summons "shall be as valid and effectual, to all intents and purposes, as if duly made and returned on the original summons." His claim is good.

The result is, that the lien claims of Thompson and Warner are valid, and that all of the lien claims are entitled to priority over the Jacobus mortgages. The lien claimants are not to be confined for satisfaction of their demands, to the amount which, on sale of the premises, would be the proportion which the value of the building would bear to that of the whole premises.