[No. 8528.   Department Two.   March 4, 1910.]

## C. M. SHAW et al., Respondents, v. L. E. SPENCER et al., Appellants.[1]

JUDGES—POWERS OUTSIDE COUNTY—NEW TRIAL—PLACE OF HEAR-ING.   Under Rem. & Bal. Code, § 41, a judge of the superior court cannot properly hear a motion for a new trial outside of the county wherein the cause is pending, except by consent of the parties.

APPEAL—REVIEW—HARMLESS ERROR—NEW TRIAL.   Where a cause is heard de novo on appeal, irregularity in hearing a motion for a new trial outside of the county wherein the cause is tried is without prejudice, if the new trial was properly denied.

MECHANICS' LIENS — LEASEHOLDS — INTERESTS LIABLE — IMPROVE-MENTS BY LESSEE—ESTOPPEL OF OWNER.   While ordinarily the estate of the lessor is not subject to mechanics' liens for improvements made by the lessee, the owner is estopped to contest mechanics' liens for improvements made by a lessee, where it appears that the public records did not disclose the lessee's interest in the demised premises, that the owner knew of the lessee's bad reputation and inability to carry out his contracts and must have anticipated his failure and the forfeiture of the leasehold, that the owner was constantly about the building during the progress of the work giving orders, paying bills when necessary to retain carpenters, and assuring them that their bills would be paid, and knew that his warning notices were immediately torn down.

SAME.   The same estoppel would apply to a lien for material fur-nished under an agreement that the owner was to pay one-fourth of the cost, which he did and received a release from further liability.

SAME—PERSONAL LIABILITY.   In an action to foreclose a me-chanics' lien for improvements made by a lessee, personal judgment cannot be rendered against the lessor, where he contracted none of the debts, although he had estopped himself from confining the liens to the leasehold interest of the lessee.

Appeal from a judgment of the superior court for King county, Holcomb, J., entered July 2, 1909, in favor of the plaintiffs, in an action to foreclose mechanics' liens, after a trial before the court without a jury.   Modified.

[1]Reported in 107 Pac. 383.

*Robert F. Booth* and *O. B. Thorgrimson*, for appellants.

*O. L. Willett, Jesse A. Frye,* and *George H. King,* for respondents.

RUDKIN, C. J.—On and prior to the 30th day of September, 1907, the Seattle and Montana Railroad Company was the owner of lot 4, of block 25, of A. A. Denny's addition to Seattle, together with the four-story building situate thereon, locally known as the Bon Marche Annex. On the above date, the railroad company leased the lot and building to the defendant L. E. Spencer, for the term of fifteen years, with an option to purchase. On the 19th day of September, 1907, while the negotiations for the lease from the railroad company were pending, Spencer, under the name of The Spencer Company, entered into an agreement with one Herman Quandt, by the terms of which Spencer agreed to sublet the first floor and a part of the basement of the building to Quandt, for a term of ten years, at the monthly rental of $700 per month for the first five years, and $900 per month for the remainder of the term, the term to commence November 1, 1907. Pursuant to this agreement, Spencer individually executed a lease to Quandt on the 3d day of October, 1907, for the ten-year term, the lease providing that the payment of rent should begin as soon as the subtenant opened the demised premises for business, not later, however, than December 1, 1907.

In the latter part of September or early part of October, 1907, Quandt took possession of the premises described in his lease, and made extensive improvements in fitting them up for restaurant and cafe purposes. In making the improvements, all material was furnished and all labor employed in the name of the Tivoli Catering Company, of which Quandt was the ostensible manager. At the time the improvements started, there was no such concern as the Tivoli Catering Company, but sometime thereafter a corporation by that name was organized, with Spencer, Madole, and Lupton as

incorporators. It does not appear that any of the capital stock of this corporation was subscribed, or that its organization was perfected beyond the filing of its articles. On or about the 1st day of January, 1908, Quandt abandoned the premises, or was ousted therefrom for failure to pay rent; and soon thereafter the plaintiffs and interveners commenced their several actions to foreclose liens for labor performed and material furnished in making the repairs and improvements above referred to. From a personal judgment in favor of the several lien claimants against Spencer, Quandt, and the Tivoli Catering Company, and a decree of foreclosure against the leasehold interest of Spencer and his assigns, this appeal is prosecuted.

The case was heard in the court below before Judge Holcomb of Adams county. After his return to Ritzville, the judge heard and denied a motion for a new trial, interposed by the appellants, and upon this ruling the first error is assigned. After providing that superior judges may make and sign certain orders outside of their respective counties, section 1 of Laws of 1901, p. 76 (Rem. & Bal. Code, § 41), expressly provides, "That nothing herein contained shall authorize the judge to hear any matter outside of the county wherein the cause or proceeding is pending, except by consent of the parties." Under this provision, a judge of the superior court cannot properly hear a motion for a new trial outside of the county wherein the cause is pending, except by consent of the parties, and the action of the trial judge in this respect was irregular; but the case is heard here *de novo*, and no prejudice has resulted to any party in interest, if the new trial was properly denied.

It is next contended that the court erred in subjecting the leasehold estate of Spencer and his assigns to the several lien claims. Ordinarily the estate of the lessor is not subject to liens for improvements made on the demised premises by the lessee during his term, unless the improvements are made

under some contract or agreement with the lessor; but we think that the appellant Spencer has, by his conduct and course of dealing, estopped himself from claiming the exemption. The agreement for a lease between the Spencer Company and Quandt was recorded, but the Spencer Company was not connected with the record title, and therefore the public records disclosed no interest in the demised premises in either Quandt or the Tivoli Catering Company. Before entering into the agreement with Quandt, Spencer was informed by his attorney that Quandt's reputation was exceedingly bad—to use his own expressive words, that he had committed every crime known to the law, except suicide. Spencer knew that the labor was performed for and the material furnished to a concern that had no interest in the property, a concern that had no existence in law or in fact. He knew that Quandt had no means to carry out his contract, and was unable to pay his labor and material bills as they became due. He was about the building constantly as the work progressed, giving orders, paying bills when necessary to retain the carpenters, assuring them that their bills would be paid when they threatened to quit, etc. True, he says he thought Quandt would be able to sell his lease to raise money to pay the bills, but it does not appear that the leasehold interest had any value beyond the rents reserved, and the circumstances must have convinced Spencer that it was only a matter of a short time at best before the leasehold estate would be forfeited for nonpayment of rent and the improvements restored to him. In fact, it would not be going too far, on the face of this record, to say that he must have anticipated just such an event. He says he posted notices warning laborers and materialmen that he would not be responsible for their claims, but if such notices were in fact posted, he also knew that they were immediately torn down and destroyed by Quandt or some other person. In short, he was using every effort to insure a completion of the

improvements and to avoid responsibility for the costs. Under the circumstances of this case, we have no hesitation in saying that this part of the judgment is clearly correct, and should be affirmed.

The Slaughter lien is attacked on the further ground that Spencer agreed to pay one-fourth of the cost of a certain metal ceiling, for which the lien was filed, and that he has paid the same and obtained a release from further liability. If we are correct in our conclusion that the leasehold estate of Spencer is subject to the debts contracted by Quandt and the Tivoli Catering Company, the same rule will apply to this claim.

The rendition of a personal judgment against Spencer is also assigned as error. This assignment must be sustained. He personally contracted none of the debts. Indeed, the pleadings of some of the lien claimants would preclude us from rendering such a judgment in their favor. The respondents, however, have no material interest in this feature of the case, and the judgment will be modified by eliminating the personal part of it, without cost to them. As thus modified, the judgment is affirmed, and no cost will be allowed on the appeal.

DUNBAR, PARKER, MOUNT, and CROW, JJ., concur.