Argued June 5, reversed and suit dismissed June 18, rehearing denied
July 16, 1918.

## AULD *v.* STARBARD.

(173 Pac. 664.)

**Statutes—Construction—Statutes Adopted from Other States.**

1.   Where a statute, after having been construed by the court of last resort in the state where the law was enacted, is adopted in Oregon, the interpretation thus given, though not binding upon the courts of Oregon, affords persuasive argument that it should be followed here.

[As to construction of adopted statutes, see note in Ann. Cas. 1917B, 651.]

**Mechanics' Liens—Duplicate Statements—Statutes—Construction.**

2.   Laws of 1915, page 224, requiring, for the preservation of a materialman's lien, that the claimant furnish within 10 days a duplicate statement of the material to the owner is mandatory, and no lien can be established unless it is complied with.

**Mechanics' Liens—Effect upon Title—Priority.**

3.   A laborer's or a materialman's lien is in the nature of a shadow, which ultimately may, but does not, cloud the title of or attach to the real property benefited by an improvement until the prescribed notice has been filed in the proper office within the time allowed, when the charge, which the law imposes as security, relates back to the beginning of the work, thereby giving to each claimant an equality, but not a priority of right in proportion to his respective demand as compared with the amount of the entire statutory liens.

**Mechanics' Liens—Materialmen—Duplicate Statements.**

4.   Where plaintiff furnished material on a contract all of which was paid for and, later on the same contract, furnished other material, after the enactment of Laws of 1915, page 224, he could not have a

materialman's lien for material last furnished, in the absence of a showing that within 10 days of the time he furnished it he rendered a duplicate statement to the owner of the property.

From Lane: GEORGE F. SKIPWORTH, Judge.

Department 2.

This is a suit to foreclose an alleged lien. The facts are that the defendants Leroy F. Straight and Hannah F., his wife, at all the times stated herein, were the owners in fee of the east 80 feet of lot 1 in Block 4 of Christian's Addition to the City of Eugene, Oregon, and on March 11, 1915, they entered into a contract with the defendant, F. S. Starbard, who stipulated to furnish the material and erect for them upon the land a two story apartment house. Starbard thereupon made an agreement with the plaintiffs, David Auld and H. C. Auld, who were partners, doing business under the name of the Mohawk Lumber Company, whereby they engaged to furnish the lumber and finishing material necessary to complete the structure. At the time the latter contract was made, a statute then in force, so far as material herein, read:

"Every * * lumber merchant * * furnishing material * * of any kind to be used in the construction * * of any building * * shall have a lien upon the same * * for the material furnished at the instance of the owner of the building * * or his agent; and every contractor * * having charge of the construction * * of any building * * shall be held to be the agent of the owner for the purposes of this Act": L. O. L., § 7416.

This section was amended February 23, 1915, by an act which took effect May 21st of that year, whereby there was added to the original a clause, which, so far as important, is as follows:

"Provided, further, that every person furnishing material of any kind to be used in the construction

* * of any building * * shall, within ten days of the time such material is delivered to any person or contractor, deliver or mail to the owner or reputed owner of the property, on, upon or about which said material is to be used, a duplicate statement of all such material delivered to any contractor or person to whom any such material has been sold or delivered, and no materialmen's lien shall be filed or enforced unless the provisions of this Act have been complied with'': Gen. Laws Or. 1915, Chap. 185.

The plaintiffs prior to June 1, 1915, furnished to Starbard, to be used in the construction of the apartment house, material for which he paid $1,165.61, and he also returned unused lumber of the value of $6.18, thereby discharging the entire indebtedness then due. Thereafter they furnished to him, to be used in the building, other material of the value of $347.10, for which no payments have been made, but they did not deliver or mail to Straight or his wife, the owners of the real property, or to any other person, a duplicate statement of any such material that had been furnished after Chap. 185, Gen. Laws Or. 1915, went into effect. In order to secure the payment of the value of material furnished subsequent to June 1, 1915, the expenses incurred, and a reasonable attorney's fee, the plaintiffs, within the time limited therefor, duly filed a notice of lien and instituted this suit for the foreclosure thereof.

A demurrer to the complaint, on the ground that it did not state facts sufficient to constitute a cause of suit, because it was not averred in the initiatory pleading that the plaintiffs delivered or mailed to the owners of the building duplicate statements of the material which had been furnished to the contractor, was overruled. Thereupon an answer was filed alleging a failure on the part of the plaintiffs to comply with the

provisions of Chapter 185, *supra;* that the plaintiffs were paid in full for all material furnished to June 1, 1915, and that by reason of the facts so stated they are estopped to assert or enforce against the owners of the land, a lien for any part of the sum so due them.

The averments of new matter in the answer were put in issue by the reply and the cause being tried resulted in a decree as prayed for in the complaint, and Straight and his wife alone appeal.

REVERSED AND SUIT DISMISSED.

For appellants there was a brief over the name of *Messrs. Swafford & McGinnis,* with an oral argument by *Mr. Whitten Swafford.*

For respondents there was a brief and an oral argument by *Mr. Charles A. Hardy.*

MOORE, J.—Chapter 185, Gen. Laws Or. 1915, was evidently patterned after an act of the legislative assembly of the State of Washington, approved March 4, 1909 (Laws Wash. 1909, Chap. 45), and incorporated in Rem. & Bal. Code as Section 1133, the material parts of which read:

"Every person furnishing material or supplies to be used in the construction, alteration or repair of any * * building * * shall, at the time such material or supplies are delivered to any person or contractor, deliver or mail to the owner, or reputed owner, of the property, on, upon or about which said materials or supplies are to be used, a duplicate statement of all such materials or supplies delivered to any contractor or person to whom any such materials or supplies have been sold or delivered, and no materialmen's lien shall be filed or enforced unless the provisions of this act have been complied with."

By a comparison of these acts it will be seen that the only material difference between the Washington statute and that of our own, is that by the former the duplicate statement of materials is required immediately to be delivered or mailed to the owner of the premises which are being improved, while the Oregon statute allows ten days for that purpose. Prior to the enactment of Chap. 185, Gen. Laws Or. 1915, the Washington statute referred to had been construed by the Supreme Court of that state, and it was held that the requirement to deliver or mail the duplicate statement of materials furnished was mandatory, and a failure to comply therewith rendered an attempted lien invalid: *Finlay* v. *Tagholm,* 60 Wash. 539 (111 Pac. 782).

1, 2. Where a statute, after having been construed by the court of last resort in the state where the law was enacted, is adopted in Oregon, the interpretation thus given, though not binding upon the courts of this state, affords persuasive argument that it should be followed here. We conclude, therefore, that the requirements of Chap. 185, Gen. Laws Or. 1915, are prescriptive and that the provision demanding that a duplicate statement of material furnished to a contractor should be delivered or mailed to the owner or reputed owner of the real property which is being improved, must be complied with within the time limited in order to entitle the claimant to the benefits of a materialman's lien.

The decree appealed from herein is based upon the assumption that the contract for the delivery of the lumber was made prior to May 21, 1915, when the amendment of Section 7416, L. O. L., became operative; that before any alteration had thus been made in the law, the plaintiffs' contract and the material which

they had furnished in pursuance thereof, gave them an interest in the security which the statute then afforded, in the nature of a vested right, and such being the case the legislature was powerless to limit the manner of acquiring or destroying the lien which could have been secured when the agreement was made and a part of the material furnished.

In *Benbow* v. *The James Johns,* 56 Or. 554, 560 (108 Pac. 634), in speaking of the security which the statute afforded materialmen and laborers, it is said:

"The lien is created by the law, and attaches as soon as the labor or material is furnished and is not dependent on any subsequent condition, expressed or implied."

It is doubtful if the lien attaches at the time stated. In *Johnson* v. *Tucker,* 85 Or. 646, 649 (167 Pac. 787), it is believed Mr. Justice BURNETT correctly states the rule as follows:

"Although a mechanic's lien takes its origin with the furnishing of labor or materials it is not perfected until the notice or claim of lien is filed, whereupon it relates back to the beginning when the work commenced or the materials were furnished."

3. A laborer's or a materialman's lien is in the nature of a shadow, which ultimately may, but does not cloud the title of, or attach to the real property benefited by an improvement, until the prescribed notice has been filed in the proper office within the time allowed, when the charge, which the law imposes as security, relates back to the beginning of the work, thereby giving to each claimant an equality, but not a priority of right in proportion to his respective demand as compared with the amount of the entire statutory liens.

In *Steamer Gazelle* v. *Lake,* 1 Or. 119, after lumber had been furnished with which to build a steamboat,

the statute which had given a lien therefor was repealed, and it was held that the material having been delivered prior to the abrogation of the enactment, the right conferred by the law was more than inchoate, and that the obligation of the contract, as it existed when consummated, could not be impaired or destroyed by the annulment of the enactment.

In *Willamette Falls Transp. & Mill. Co.* v. *Riley,* 1 Or. 183, 185, pursuant to a contract made in June, 1853, work and labor was performed upon a building until September, 1854. On May 1st, of the latter year, however, a statute enacted in 1851, which gave a lien for such service, was repealed without any saving clause, and another law was adopted in lieu thereof. In deciding that the right to the lien continued notwithstanding the repeal, Mr. Chief Justice WILLIAMS remarks:

"When Riley commenced labor upon the buildings of said company, the law, to secure the payment of his wages, gave him a lien therefor upon said buildings, and required him, within sixty days from their completion, to file a notice of his intention to hold such lien; but before said buildings were completed, the law was repealed, and another enacted at the same time, which allowed him three months in which to file, and in which he did file, said notice. Now, as one statute ceased to exist, and the other was created *uno flatu,* we think that the act of 1854 may be regarded as a continuation of the act of 1851, so that the laborer may have that security for his hire which the law promised when he commenced work; the labor, in question, must be regarded as an entirety, and the rights of the party to the whole job be determined in accordance with the law in force at the time the contract was made, or in accordance with the law in force at the time the work was finished."

The act of the legislative assembly of the Territory of Oregon passed February 4, 1851, and referred to in

the case of *Steamer Gazelle* v. *Lake,* 1 Or. 119, made all boats built in the Territory of Oregon liable for debts contracted by the master or owner for

"work done, and supplies or materials furnished by the tradesmen, mechanics, or others for, on account of, or towards the building * * such boats or vessels, and the debts so contracted, shall be a lien on such boats or vessels": Gen. Laws Or. passed at the second session begun and held at Oregon City, December 2, 1850, p. 169, § 1.

That act contained no provision for the filing of any claim as a condition precedent to securing the lien, but required the claimant to file a verified statement of his claim against the boat or vessel with the justice of the peace of the county where the boat was, if the demand did not exceed $100, or if greater than that sum such verified statement was to be filed with the clerk of the District Court of the proper county, whereupon a warrant of attachment was issued and the boat or vessel seized by the sheriff or constable: Id., § 2.

As no claim of lien was required to be filed at that time in respect to such class of property, it was properly held in the case last cited that the lien thus recognized was not inchoate, but became vested upon the delivery of the lumber which was used in building the steamboat. Under enactments like those at present in force in Oregon, it is believed however, that the right to a statutory lien is only inchoate, and that the lien does not become vested until the notice or claim has been filed, as required by law: Bloom, Mechanics' Liens, § 416; 27 Cyc. 110; 18 R. C. L. 946. It will be seen that the decision rendered in *Steamer Gazelle* v. *Lake, supra,* which is cited and relied upon by plaintiffs' counsel, is not controlling herein.

The final conclusion reached in the case of *Willamette Falls Transp. & Mill. Co.* v. *Riley,* 1 Or. 183, which is also invoked as sustaining the theory of plaintiffs' counsel, can be of little value since it was there held that the claimant's right to enforce his lien might be worked out in accordance with the law of 1851, which was in force when the contract was made, or that the suit to foreclose the lien might proceed in conformity with the provisions of the act of 1854, which was in force when the work was finished.

In *Weaver* v. *Sells,* 10 Kan. 609, a claimant who had sold and delivered lumber which was used in the construction of a building, filed a claim of lien for the value of the material so supplied. The statute giving the lien was repealed without excepting any causes from its operation. In deciding that case it was held that a lien for material became vested when the lumber was furnished, and that it was not within the power of the legislature afterward to destroy the right, by repealing the statute under which the right accrued. In that case as the filing of the notice was essential to the preservation of the lien, we do not think the right became vested until the claim was filed.

A text-writer in discussing this subject remarks:

"Some courts hold that a mechanic's lien is a vested right, which the legislature cannot take away after it has once accrued; but the better reason and an equal weight of authority sustain the doctrine that the lien pertains merely to the remedy, and may therefore be taken away by the legislature that created it": Boisot, Mechanics' Liens, § 33.

Another author observes:

"Where a contract was made and materials were furnished while a certain lien law was in force, but the notice of lien was not filed in the recorder's office until

after a subsequent lien law went into effect, the court held that the lien was not lost, but that it must be enforced in accordance with the provisions of the latter act. In the second act there was a saving clause. 'Nothing contained in this act shall be deemed to apply to or affect any lien heretofore acquired.' Until the claim was filed there was simply a right to a lien, and the lien had not yet been 'acquired' (although this point was not specially noticed in the case referred to); yet the court held that 'after the new statute went into effect, all subsequent acts and proceedings relating to the lien or its enforcement were governed by, and must have been in accordance with, its provisions' ": Bloom, Mechanics' Liens, § 36.

4. Whether or not the legislative assembly, by amending Section 7416, L. O. L., could take away an inchoate right to a lien, after a contract had been made and a part of the material furnished, is not necessary to a decision herein, for Chap. 185, Gen. Laws Or. 1915, does not attempt to abrogate or abridge such right, but only to add another requirement for the benefit of the owner of the premises, that he shall be notified by a duplicate statement delivered or mailed to him of the materials furnished for the improvement of his property, when the betterment is being made by a contractor. Nor is it essential to consider whether or not such amendment is retroactive, for all the material furnished by the plaintiffs to Starbard prior to May 21, 1915, to be used in the construction of the building had been fully paid for before the claim of lien was filed.

The right to the lien not being vested when the amendment was enacted, such statute pertained only to the remedy, and this being so the alleged lien must fail for want of delivering or mailing to the owners of the real property duplicate statements of the ma-

terials furnished after June 1, 1915. It follows from these considerations that the decree is reversed and the suit dismissed.    REVERSED AND SUIT DISMISSED.

REHEARING DENIED.

McBRIDE, C. J., BEAN and JOHNS, JJ., concur.