Submitted on briefs August 30, affirmed October 11, rehearing denied and former opinion modified December 20, 1927.

# CARL A. SCHRAM v. JAMES MANARY.

### (260 Pac. 214; 262 Pac. 263.)

**Mechanics' Liens — Mortgages — Mechanic's Lien is Preferred to Lien, Mortgage or Other Encumbrance Attaching Prior to or Subsequent to Commencement of Structure (Or. L., § 10193).**

1. Under Section 10193, Or. L., providing for priority between liens and encumbrances, a mechanic's lien is preferred to lien, mortgage or other encumbrance attaching to land subsequent to time structure was commenced or materials were commenced to be furnished and placed upon or adjacent to land, and to all prior liens, mortgages, or other encumbrances.

**Mechanics' Liens — Mechanic's Lien is Superior to Encumbrance Unrecorded at Time Building or Structure was Commenced or Materials Commenced to be Furnished (Or. L., § 10193).**

2. Under Section 10193, Or. L., mechanic's lien is regarded as superior to encumbrance unrecorded at time building or structure was commenced or materials therefor commenced to be furnished.

**Mechanics' Liens—Materialman's Failure to Give Owner Notice of Commencement of Delivery of Material Held to Preclude Right to Lien on Owner's Interest in Land (Or. L., § 10191).**

3. Where materialmen furnishing material to vendee of land purchased on contract failed to give notice in writing to vendor as owner of the land, as required by Section 10191, Or. L., he was not entitled to lien on owner's interest therein for materials furnished at instance of vendee.

**Mechanics' Liens—Term "Owner" as Used in Statute is not Limited in Meaning to Ownership of Fee, but Includes Ownership of Lesser Estate (Or. L., § 10191).**

4. As used in Section 10191, Or. L., requiring materialmen to give notice in writing to owner of land sought to be held, the term "owner" is not limited in meaning to ownership of fee, but includes also ownership of a lesser estate.

**Mechanics' Liens—Vendee of Land as Owner of Equitable Interest Therein was "Owner," Within Statute, and Its Estate Subject to Mechanic's Lien (Or. L., § 10191).**

5. Vendee of land purchased on contract was "owner" of an equitable interest therein, within Section 10191, Or. L., and its

---

1. Priority as between mortgage of property and mechanic's lien thereon, see notes in Ann. Cas. 1916B, 634, 667, 669, 672, 674. See, also, 18 R. C. L. 955, 957. Priority of mechanic's lien over earlier mortgage, see note in 14 L. R. A. 306.

4. Scope and import of term "owner" in mechanic's lien statute, see note in 2 A. L. R. 794.

estate · subject to mechanic's lien for materials furnished in improvements erected on land.

**Mechanics' Liens — Posted Notice by Fee Owner Several Weeks After Improvements were Commenced Held not to Bar Mechanic's Lien on His Interest (Or. L., § 10191).**

6. Where parties furnishing materials to vendee of land purchased on contract for construction of buildings and improvements served notice on vendor as fee owner, in compliance with Section 10191, Or. L., that they had commenced to furnish materials on vendee's order, posting of notice on premises by vendor several weeks after commencement of improvements *held* not to bar, in view of Section 10194, right of materialmen and labor claimants to enforce mechanics' liens on owner's interest.

**Mechanics' Liens—Owner can Relieve Himself from Responsibility by Posting Notices Within Three Days After Obtaining Knowledge of Construction of Improvements (Or. L., § 10194).**

7. In order for owner to relieve himself of responsibility for materials and labor by posting notices, under Section 10194, Or. L., he must act within the prescribed period of three days after obtaining knowledge of construction of improvements.

**Mechanics' Liens—Fee Owner cannot Knowingly Permit His Vendee to Contract With Laborers and Materialmen for Improvement Without Compensating Them.**

8. In view of Section 10194, Or. L., fee owner cannot knowingly permit his vendee to contract with laborers and materialmen for improvement of land by construction thereon, without compensating them.

**Mechanics' Liens—Contractor Performing Labor and Furnishing Material for Numerous Buildings Could Claim Lien Against All Structures.**

9. Contractor performing labor and furnishing material indiscriminately for building of numerous structures on a single tract of land, and under terms of a single contract, could claim lien against all structures thereon.

---

5. Vendee as "owner" within meaning of mechanic's lien statute, see note in 2 A. L. R. 795. Mechanic's lien on building erected by vendee, see note in 62 L. R. A. 380. See, also, 18 R. C. L. 885.
6. See 18 R. C. L. 907.
8. Statutes giving lien when owner with knowledge of improvement fails to give notice of nonliability, see notes in 23 L. R. A. (N. S.) 618; L. R. A. 1917D, 584. See, also, 18 R. C. L. 896. Mechanic's lien on realty for improvements with consent but not at expense of owner of realty, see notes in 11 Ann. Cas. 1082; 19 Ann. Cas. 734; Ann. Cas. 1916C, 1133; Ann. Cas. 1918C, 1019. See, also, 18 R. C. L. 896.
9. Right to file single mechanic's lien against several buildings, see note in 17 L. R. A. 314. See, also, 18 R. C. L. 951.

ON PETITION FOR REHEARING.

Mechanics' Liens—Materialman Establishing Lien Against Vendor's Property for Materials Furnished Vendee Held not Entitled to Personal Judgment Against Vendor as Owner (Or. L., § 10193).

10. Person furnishing materials to vendee of property without any contractual relation with vendor, and establishing lien on property, was not entitled to personal judgment against vendor as owner, under Section 10193, Or. L.

Mechanics' Liens—Holder of Mechanic's Lien may not Recover Personal Judgment Against Owner With Whom He has No Contractual Relation.

11. Mere establishment of mechanic's lien on owner's property does not warrant personal judgment against owner for amount of lienor's claim, in absence of contractual relation with owner.

Mechanics' Liens, 40 C. J., p. 49, n. 39, p. 61, n. 16, 17, p. 62, n. 23, 38, p. 125, n. 3, 4, p. 127, n. 62, 63, 64, 65, p. 162, n. 6, p. 166, n. 68, p. 167, n. 88, p. 273, n. 51, p. 279, n. 51, p. 280, n. 72, 74, p. 285, n. 57, 58, p. 293, n. 54, p. 499, n. 84.

From Multnomah: George Rossman, Judge.

In Banc.

On January 31, 1925, James Manary, owner of 37 acres of real property situate in Multnomah County, Oregon, entered into an agreement with the Tourist Service Corporation, a private corporation, for the sale of that property, at the agreed price of $68,000, to be paid in installments over a period of years. The contract provided that, upon the execution and delivery thereof, the vendee should have complete possession of the premises covered thereby, and, acting thereunder, the Tourist Service Corporation took possession of the property on or about the date of the execution of the contract.

Under the contract the vendee agreed to pay all taxes and assessments levied against the property,

11. Right to personal judgment in action to foreclose mechanic's lien, see note in Ann. Cas. 1912A, 129. See, also, 18 R. C. L. 991. Right of subcontractor or materialman to personal judgment against owner, see notes in 14 L. R. A. (N. S.) 1036; 24 L. R. A. (N. S.) 321. See, also, 18 R. C. L. 992.

including drainage and diking assessments; that it would cause all buildings to be erected upon the property to be insured against fire for not less than 75 per cent of their value, in a company satisfactory to the vendor, deliver the policy or policies to the vendor, and pay the premiums thereon; and that it would furnish the vendor with a good and sufficient surety bond so as to indemnify him against any loss he might sustain by reason of material furnished or labor performed in the erection of buildings upon the property. It was further agreed that the buildings to be erected on the premises from time to time should not be removed before final payment of the purchase price of the property had been made by the vendee. The contract further provided that, when the vendee had complied with all the conditions thereof, the vendor would execute to the vendee a good and sufficient deed, but that, in the event of the failure of the vendee to make the payments punctually as agreed, ''the time for the payment being declared to be the essence of this contract, then the first party shall have the right to declare this agreement null and void, and in such case all the right and interest hereby created or then existing in favor of said second party under this agreement shall utterly cease.''

On October 5, 1925, one Carl A. Schram brought suit against James Manary, the Tourist Service Corporation, a corporation, Eagle Lumber Company, a corporation, Y. C. Bressie and B. E. Moore, co-partners doing business under the firm name and style of Sunlite Electric Company, and C. J. Kelly, alleging, among other things, that, between March 2 and March 23, 1925, inclusive, Parker-Schram performed labor for defendants James Manary and

Tourist Service Corporation in the construction of their tourist auto park situate on the lands hereinbefore referred to. This claim was settled and the complaint dismissed; neither has defendant Sunlite Electric Company any further interest in these proceedings.

Defendants Eagle Lumber Company and C. J. Kelly answered and filed cross-complaints, whereby the lumber company seeks to foreclose a mechanic's lien for material, and Kelly a like lien for labor and material, asserted to have gone into the construction and improvement of the above-described tourist auto camp. Manary replied, admitting certain allegations and denying others contained in the cross-complaints, and, as an affirmative defense, averred his ownership of the 37 acres of land described in the contract above mentioned. He alleged that, on May 6, 1925, he gave C. J. Kelly and the Eagle Lumber Company notice in writing that he would not be responsible for any material or labor furnished in the construction of any building on that real property, which notice he caused to be posted in conspicuous places on the land. Thereafter, he filed an amended answer against the Tourist Service Corporation and H. W. Sitton, trustee in bankruptcy for that corporation, and, setting up a cross-complaint, averred, among other things, that the corporation had made default in the installment payments due upon the purchase price of the property and had been adjudged a bankrupt, and prayed for a strict foreclosure of the contract existing between him and the defendant corporation.

On the trial, a decree was entered foreclosing the land contract, sustaining the lien of defendant Kelly for labor performed on the land and buildings to

the extent of $1,059.08, with his attorney's fees and costs, and a lien for material furnished for the buildings constructed on the land to the extent of $5,073.66, together with a proportionate part of the attorney's fees and costs, and upholding the lien of the Eagle Lumber Company against the land and buildings to the extent of $832.58. Manary appeals, asserting that the court erred in not entering a decree in his favor. Defendant Kelly appeals from that part of the decree denying him a lien against the land for material supplied by him.        AFFIRMED.

For appellant there was a brief over the names of *Mr. John Van Zante* and *Mr. Albert H. Tanner.*

For respondents there was a brief over the names of *Mr. Estes Snedecor, Mr. George N. Woodley* and *Messrs. Lewis, Lewis & Finnigan.*

BROWN, J.—There is but little, if any, controversy concerning the facts in this case. That the labor was performed and the material furnished as alleged by Kelly and the lumber company is clearly apparent. The character of the written contract that placed defendant Tourist Service Corporation in possession and occupancy of the 37 acres of land enwrapped in this cause is evident. That the construction of a tourist auto camp was contemplated by the vendee of the land was known to the vendor when he executed the sales and purchase agreement. The work of construction was commenced with the vendor's knowledge and consent, and he required that any building constructed on the lands be insured in his favor and remain upon the land until the purchase price of the real property should be fully paid. In the improvement of the premises for use as an

auto park, old buildings were torn down and re-
moved therefrom, brush was cleared from the land
preparatory to building, and much excavation for
necessary structures for the auto camp was begun
and completed in March, 1925, all of which was known
to Manary. The reasonable value of the excavation
alone was more than nine hundred dollars. In April,
1925, Kelly went upon the premises for the purpose
of mapping out the ground for his work, and on
May 5th he commenced the execution of his plumbing
contract. Some time in March, 1925, Manary was
advised of the financial irresponsibility of the Tourist
Service Corporation, and on May 6th, weeks after
the commencement of the construction work, he under-
took to protect his interest in the real property
against all claims for improvement liens, by posting
three notices in conspicuous places on the land, warn-
ing all persons that he would not be responsible for
material furnished or labor performed in the im-
provement of his 37 acres. The Tourist Service
Corporation having failed to pay for the excavation
completed in March, Parker-Schram had, on April
22, 1925, filed a lien on the land on account of labor.
We have already stated that this claim has been fully
settled.

This case involves an exposition of the Mechanic's
Lien Law of this state, reading:

"Every * * lumber merchant, laborer, * * and
other persons performing labor upon or furnishing
material, * * to be used in the construction * * of
any building * * shall have a lien upon the same for
the work or labor done or * * material furnished at
the instance of the owner of the building or other
improvement, or his agent; and every contractor, sub-
contractor, architect, builder, or other person having
charge of the construction * * of any building * *

shall be held to be the agent of the owner for the purpose of this act; provided, that every person * * or corporation furnishing material * * to be used in the construction * * of any building * * shall, not later than five days after the date of the first delivery, to any contractor or agent, of such material or supplies for which a lien may be claimed, deliver or mail to the owner * * of the property * * upon * * which said material or supplies are to be used, a notice in writing stating in substance and effect that such person * * has commenced to deliver material * * for use thereon, with the name of the contractor or agent or other person ordering the same, and that a lien may be claimed for all material * * furnished by such person * * for use thereon * * . No materialmen's lien for material * * furnished to the contractor or the agent of any owner * * shall be enforced unless the above provisions of this act have been complied with." Or. L., § 10191.

The foregoing section of our Code, when complied with, creates a lien for material or labor upon the building or structure. Section 10192 extends the lien on the structure to the land upon which it rests, together with a convenient space about the same, or so much thereof as may be required for its convenient use and occupation: *Chenoweth* v. *Spencer,* 64 Or. 540 (131 Pac. 302, Ann. Cas. 1914D, 678). Section 10193 provides for priority between liens and mortgages, and, as to the enforcement of liens which do not extend to the land, says:

"In enforcing such lien, such building or other improvement may be sold separately from said land; and when so sold, the purchaser may remove the same, within a reasonable time thereafter, not to exceed thirty days, upon the payment to the owner of the land of a reasonable rent for its use from the date of its purchase to the time of removal; provided, that if such removal be prevented by legal pro-

ceedings, said thirty days shall not begin to run until the final determination of such proceedings in the court of first resort, or the appellate court if appeal be taken.''

1, 2. Under this section, a mechanic's lien upon a structure shall be preferred to any lien, mortgage or other encumbrance attaching to the land subsequent to the time when the structure was commenced ''or the materials were commenced to be furnished and placed upon or adjacent to the land,'' and to all prior liens, mortgages, or other encumbrances upon such land as well. Such lien is also regarded as superior to any encumbrance unrecorded at the time the building or structure was commenced or the materials for such structure were commenced to be furnished. In support of the right of sale and removal announced by the foregoing statutory provision, see *Allen and Krosel* v. *Rowe et al.,* 19 Or. 188 (23 Pac. 901); *Cooper Mfg. Co.* v. *Delahunt,* 36 Or. 402 (51 Pac. 649, 60 Pac. 1); 2 Jones on Liens (3 ed.), § 1250.

3. From the evidence it does not appear that Kelly, or any other person in his behalf, complied with the mandatory provisions of Section 10191, Or. L., that he give notice in writing to the owner sought to be held stating, in effect, that he had commenced to deliver material and supplies for use in the construction of the improvement to be erected upon the land. It follows that he is not entitled to a lien for materials upon Manary's interest in the land: *Auld* v. *Starbard,* 89 Or. 284 (173 Pac. 664); *Columbia River Door Co.* v. *Todd,* 90 Or. 147 (175 Pac. 443, 860); *Boise-Payette Lumber Co.* v. *Dominican Sisters,* 102 Or. 314 (202 Pac. 554); *Christman* v. *Salway,* 103 Or. 666 (205 Pac. 541); *Nicolai-Nep-*

*pach Co.* v. *Poore,* 120 Or. 163 (251 Pac. 268);
*Johnson* v. *Alm et al.,* 121 Or. 285 (254 Pac. 803).

4, 5. What constitutes an owner, within the meaning of the Mechanic's Lien Law? The meaning of the term "owner," as used in the Mechanic's Lien Law, is controlled by the context and purpose of the statute. The term, as applied to real property, has no fixed meaning which can be declared to be applicable under all circumstances and under any and every enactment. It usually implies that the estate possessed is an estate in fee simple, but it has been defined to include one who has the usufruct control or occupation of land with a claim of ownership, whether his interest be an absolute fee or a less estate: *Binhoff* v. *State,* 49 Or. 419 (90 Pac. 586). See, also, Anderson's Dictionary of Law; 2 Jones on Liens (3 ed.), § 1248. As used in Section 10191, Or. L., the term "owner" is not limited in meaning to the ownership of the fee, but includes also the ownership of a lesser estate. If the person who causes improvements to be made upon land is the owner of the fee, the lien is upon the fee; but if he owns a lesser estate, the lien is upon that estate. In the cause at issue the vendee in possession, i. e., the owner of the equitable interest and likewise the corporation that contracted for the improvements to be constructed, was *an owner* within the meaning of that section, and its estate was subject to a mechanic's lien: *Willamette Falls Co.* v. *Riley,* 1 Or. 183; *Kezartee* v. *Marks & Co.,* 15 Or. 529 (16 Pac. 407); *Myers* v. *Strowbridge Estate Co.,* 82 Or. 29 (160 Pac. 135); Boisot, Mechanics' Liens, § 301; 18 R. C. L., p. 885; 40 C. J., p. 61, § 26.

Now, alluding to the owner's interest in the real property: Manary, the owner of the fee, is an owner

under Section 10194, and under the provisions of Section 10191 he is likewise an owner and entitled to the five days' notice required of any person claiming the benefit of a lien for material furnished in accordance therewith, before his premises can be charged with the materials that went into the improvements. See the recent case of *Nicolai-Neppach Co.* v. *Poore, supra.*

6. From the statute and its application by this court in a number of instances it is clear that Kelly is not entitled to a lien upon the interest of Manary in the real property, for the materials that went into the structures or superstructures erected upon that land at the instance of the equitable owner. As found by the trial court, he is, however, entitled to a lien upon the land for the amount of the labor claims, unless the notice posted by Manary constitutes a bar.

The claim of the Eagle Lumber Company likewise involves the sufficiency of the Manary notice. We shall now consider that notice. It appears from the record that the Eagle Lumber Company furnished its first material on May 27, 1925, and, on June 1, 1925, mailed to the defendant Manary a notice in writing in compliance with Section 10191, Or. L., which notice informed Manary that the Lumber Company had commenced to furnish material upon the order of the Tourist Service Corporation, to be used in the construction of buildings upon the real property involved herein, and that a lien might be claimed for all material furnished for use thereon. On this point, the lower court found:

"That said buildings or improvements were constructed with the knowledge and consent of said James Manary."

Section 10194, Or. L., announces a rule of evidence that has been invoked in the instant case. That section provides:

"Every building or other improvement mentioned in Section 10191, constructed upon any lands with the knowledge of the owner or the person having or claiming any interest therein shall be held to have been constructed at the instance of such owner or person having or claiming any interest therein; and the interest owned or claimed shall be subject to any lien filed in accordance with the provisions of this act, unless such owner or person having or claiming an interest therein shall, within three days after he shall have obtained knowledge of the construction, alteration or repair, give notice that he will not be responsible for the same by posting a notice in writing to that effect in some conspicuous place upon said land, or upon the building or other improvement situated thereon."

Under the foregoing statutory provision, the interest of the owner of the fee in the land is subject to the lien claims, notwithstanding the labor and material was furnished at the instance of another person, if the owner, knowing that the "construction, alteration or repair" was made, failed to give notice that he would not be responsible for the same: *Allen v. Rowe,* 19 Or. 188 (23 Pac. 901); 2 Jones on Liens, (3 ed.), § 1255.

7. Manary seeks to relieve himself from all responsibility by reason of having posted notice on the lands upon which the auto camp was constructed. However, it will be remembered that this notice was posted, not within the three days after the commencement of the construction of the improvements came to his knowledge, but weeks thereafter. For a definition of the phrase "the commencement of a structure," within the meaning of the Mechanic's Lien Law,

see *Mutual Benefit Life Ins. Co.* v. *Rowand,* 26 N. J.
Eq. 389. It is a well-established rule that, in order
for an owner to relieve himself from responsibility
by posting notices, he must act within the prescribed
period of three days after obtaining knowledge of
the construction of the improvements. It is said in
40 C. J., Section 138, Mechanics' Liens:

"Strict compliance with a statute of the character
under consideration is necessary to relieve an owner
from responsibility in a case falling within its terms.
* * The notice prescribed by statute may be given on
any day the work is in progress, provided it is given
within the time limited after acquiring knowledge of
the improvement."

8. That Manary knew that his vendee intended to
construct a large number of buildings upon the land
described in the contract, for the purpose of estab-
lishing an auto camp thereon, is manifest. It is
equally plain that he knew that the corporation en-
tered into the execution of that intent and commenced
the construction of its camp, yet it was weeks after
the construction was commenced that he finally
sought to hold his premises free from liens by post-
ing notices. This is the decisive point in the case.
Under the theory of our Mechanic's Lien Law, it was
not equitable for Manary, the owner of the fee, to au-
thorize, or knowingly to permit, his vendee to contract
with laborers and materialmen for the improvement
of his real property by the construction of a valuable
auto camp thereon, without compensating those who
toiled and those who furnished the material that
went into the structures placed upon his property:
Or. L., § 10194.

Manary invokes the protection of the five days'
materialmen's notice prescribed by Section 10191,

Or. L. It is his right. The contractor and material-men now seek the benefit. inuring to them by the terms of Section 10194 thereof. They too are within their right. It is our duty, in the administration of the Mechanic's Lien Law, to carry out the legislative intent as expressed in each of the foregoing sections, and thus secure to the litigants the rights which the law gives them.

9. Manary likewise assails the validity of what he terms a lump sum lien on separate buildings and improvements. This objection is without merit. It was unnecessary for the contractor furnishing labor and material to show the value of the labor and material that went into each structure. Under the terms of a single contract, the contractor performed labor and furnished material indiscriminately for the building of a number of structures upon a single tract of land. Likewise the lumber company under a single contract furnished material that went into the several structures upon a single tract of land described in its lien. Hence it was proper for each lienor to claim a lien against all of the structures: *McCormack* v. *Bertschinger,* 115 Or. 250 (237 Pac. 363); *Warrenton Lumber Co.* v. *Smith,* 117 Or. 530 (245 Pac. 313).

The record discloses no valid reason for reversing this case. The decree of the trial court should be affirmed. It is so ordered.    AFFIRMED.

ROSSMAN, J., did not participate in the consideration of this case.

Rehearing denied and former opinion modified December 20, 1927.

ON PETITION FOR REHEARING.

(262 Pac. 263.)

For the petition, *Mr. John Van Zante* and *Mr. Albert H. Tanner.*

No appearance *contra.*

This is a petition for rehearing. In our former opinion, we held that, under Section 10193, Or. L., a mechanic's lien *upon any building or other improvement* shall be preferred to any lien, mortgage or other encumbrance attaching to the land subsequent to the time when the structure was commenced "or the materials were commenced to be furnished and placed upon or adjacent to the land," and to all prior liens, mortgages or other encumbrances upon such lands as well. A careful reading of the sections embraced within the Mechanic's Lien Law will support our holding. We believe that the petitioner has misunderstood our meaning.

10, 11. Petitioner asserts that we overlooked one important question in our former opinion. We concede that, in our previous consideration of this cause, we did not determine the right of plaintiff to a personal judgment against Manary. The record shows that Manary was not a personal debtor to either of the plaintiffs. However, certain of his real property is held subject to a lien, by virtue of the statutory lien given to those who supplied material or labor for the construction of certain improvements thereon. The mere establishment of a lien upon Manary's property does not warrant a personal judgment

against him as owner, because there was no contractual relation between him and the lienor: 19 Stand. Proced., p. 729; 40 C. J., § 740, subd. 4. In *Duby* v. *Hicks,* 105 Or. 27 (209 Pac. 156), this court, speaking through Mr. Justice RAND, said:

"The lien claimed was purely a statutory lien, and the sole relief sought was its foreclosure."

That that plaintiff was entitled to no further relief is settled law in this jurisdiction. The foregoing language was quoted with approval in *McCormack* v. *Bertschinger,* 115 Or. 250 (237 Pac. 363), where this court again wrote:

"The plaintiff was not entitled to a judgment against the defendant personally, but only to the foreclosure of the lien and a sale of the property in satisfaction thereof."

There are many authorities in support of this proposition. See 40 C. J., p. 499, note 84. *Shaw* v. *Spencer,* 57 Wash. 587 (107 Pac. 383), is much in point. In that case, the Supreme Court of Washington held that, where a lessor did not personally contract for certain improvements made upon the leased lands by his lessee, he was not personally liable therefor, although he was by his conduct estopped from asserting the exemption of his interest from liens for material furnished in making the repairs.

The decree appealed from is modified in accordance with the above. With this addition, the original holding of this court will stand.

REHEARING DENIED.   FORMER OPINION MODIFIED.

ROSSMAN, J., did not participate in the consideration of this case.