Argued April 14, remanded with directions May 18, rehearing
denied June 22, 1920.

# PACIFIC LIVESTOCK CO. *v.* PORTLAND LUMBER CO.

# NOYES–HOLLAND LOGGING CO. *v.* PACIFIC LIVESTOCK CO.

(189 Pac. 893.)

**Estoppel—Ejectment Against Railroad Held not Barred by Acts of Plaintiff's Predecessor in Interest.**

1. In ejectment by a land owner against a lumber company which had constructed a railroad over the premises under alleged authority from plaintiff's predecessor in interest in consideration of the transportation of certain logs, plaintiff was not estopped by such action of his predecessor in interest in the absence of evidence that the former owner had knowledge before the building of the road that it traversed the particular tract in question.

**Principal and Agent—Purchaser of Timber Held not Agent so as to Bind Seller by Agreement for Construction of Logging Road.**

2. Where plaintiff's predecessor in interest sold certain timber to a third party, who was empowered to remove it in any way he chose, a logging company could not contract with such third party after the construction of the road over the land so as to bind plaintiff's predecessor in interest; the third party not being an agent in such respect.

**Principal and Agent—One Deals With Alleged Agent at His Own Risk.**

3. One who deals with another representing himself to be an agent of a third party sought to be bound deals at his peril.

**Reformation of Instruments—Evidence Held not to Show That Contract Failed to Include Premises Involved in Ejectment.**

4. In ejectment based on construction of a logging railroad over plaintiff's land, wherein defendants contended that, by mutual mistake, the contract for construction of the road made between defendant and plaintiff's predecessor in interest failed to include the premises in question, evidence *held* insufficient to prove a mistake authorizing a reformation of the contract.

**Ejectment—Verdict for Plaintiff must be Directed When Ownership in Fee Simple is Admitted.**

5. Where in ejectment a cause of action for the recovery of the possession of realty without damages is stated, and it is admitted by the pleadings that plaintiff was the owner in fee simple of the property, a verdict for plaintiff should have been directed, since such title includes the right to possession in the absence of a showing to the contrary by the pleadings, in view of Section 328,

L. O. L., providing that a defendant shall not be allowed to give in evidence any estate in himself or another in the property or any license or right to possession thereof unless the same be pleaded in his answer.

**Appeal and Error—Nonappealing Party cannot Support Judgment by Claim of Error in Trial Court's Ruling.**

6. In ejectment action judgment for defendants, erroneous because they failed to deny, or plead or prove a defense to, plaintiff's allegation of ownership in fee, could not, on appeal by plaintiff alone, be supported by defendants on the theory that the trial court erred in ruling that no estoppel against plaintiff could be proved.

**Appeal and Error—Verdict as to Damages in Ejectment Suit Held Conclusive on Appeal.**

7. Where, in an ejectment suit submitted to the jury on the question of damages, a general verdict in defendant's favor was returned, such a verdict was conclusive on the question of fact involved in the claim for damages, and cannot be disturbed on appeal.

From Columbia: James A. Eakin, Judge.

Department 1.

The Pacific Livestock and Lumber Company, a corporation, began an action in ejectment against the Portland Lumber Company and the Noyes-Holland Logging Company, also, corporations, to recover possession of certain real property. For convenience the plaintiff will be called the "Livestock Company," and the defendant Portland Lumber Company, the "Lumber Company." It is not necessary to give separate designation to the other defendant. After reciting the corporate character of the parties, the complaint avers:

"That during all the times herein mentioned the plaintiff and its predecessors in interest have been, and plaintiff now is, the owner in fee simple of the following described real estate situated in the county of Columbia, State of Oregon, to wit: Southwest quarter of the southwest quarter of section 3, township 7 north, range 3 west, Willamette Meridian."

Thus far the allegations of the complaint are admitted. That pleading concludes with this averment, which is traversed by the answer:.

"That on or about the first day of January, 1916, the defendants wrongfully and without any right therefor whatever, entered upon the aforesaid real property of the plaintiff; that the plaintiff is the owner in fee simple of all of said real estate and is entitled to the immediate possession thereof; that the defendants ever since the first day of January, 1916, and now, wrongfully withhold possession of said real estate from the plaintiff."

As a further and separate cause of action, the plaintiff states the artificial existence of the parties and its ownership of the realty as before, all of which was admitted. Further pleading, in the second cause of action the plaintiff alleges special damages in that the defendants constructed a railroad over and across the premises, and in doing so made cuts in the ground, built up grades, and deposited a great quantity of rock along the line, to be used as ballast, all to the damage of the plaintiff in the sum of $2,000. This was denied by the answer.

The defendants in the ejectment action filed a cross-bill in equity, setting up an agreement between the Lumber Company and M. T. O'Connell, the Livestock Company's predecessor in interest in the land involved, whereby there was granted to the Lumber Company by O'Connell the right of constructing a logging railroad over certain other realty owned by O'Connell in Columbia County, the privilege to expire in five years if the Lumber Company had completed its logging operations, otherwise to be extended for five years. The cross-bill claims,

in substance, that by mutual mistake of the parties the 40-acre tract for which the ejectment was brought was omitted from the contract; that, in pursuance of the agreement as actually intended by all concerned, it went upon the land in question, conceiving it to be within the terms of the covenant, and constructed its road, one of the considerations being that O'Connell's timber should be hauled out to the Columbia River at a certain rate; and that it had performed the agreement according to the original understanding, and demanded an extension of the contract for an additional five years, which was refused. In a separate statement in the cross-bill this matter is averred as an estoppel against O'Connell and the ejectment plaintiff as his successor, urging that O'Connell stood by and saw the road constructed over the tract in question, without objecting, and had enjoyed the benefits of the agreement by having his timber transported, whereby he and his successor are concluded from denying the right of the equity plaintiffs to maintain the railroad. The cross-bill prayed for a reformation of the contract so as to include the realty described in the ejectment complaint, and that the action be enjoined. The answer to the cross-bill was the general issue.

The equity suit was tried first, resulting in a decree dismissing the cross-bill and allowing the ejectment action to proceed. The answer in ejectment was amended in some particulars, the cause was tried before a jury, and a general verdict was returned for the defendant. The Lumber Company and the Noyes-Holland Logging Company appeal from the decree dismissing the cross-bill. The Live-

stock Company appeals from the judgment rendered for the defendant in the ejectment action.

REMANDED WITH DIRECTIONS.

For Noyes-Holland Logging Co. and Portland Lumber Co., there was a brief over the names of *Mr. Hugh Montgomery* and *Messrs. Platt & Platt,* with an oral argument by *Mr. Montgomery.*

For Pacific Livestock and Lumber Co. and M. T. O'Connell, there was a brief and an oral argument by *Mr. H. M. Esterly.*

BURNETT, J.—Considering the proceeding in equity first, we find the substance of the testimony to be that the engineer of the Lumber Company at the instance of its officers went with its vice-president and manager upon the premises, surveyed out a road across the O'Connell property, and made a map thereof, which the vice-president, as manager of the Lumber Company, submitted to O'Connell, reaching a result by negotiation culminating in the execution of the contract already mentioned, which had attached to it a copy of the map mentioned. Upon it was delineated the line of road from the Columbia River across some of O'Connell's land, but not touching the 40 acres in question. The greater portion of the proposed road was indicated by two solid parallel lines between which the space was divided equally between cross-sections of black and white. The other portion of the line, known as main line No. 2, was indicated on the map by a dotted line; but neither by the terms of the contract itself nor by the portrayal of the line of the road on the map made part of the contract, did the line of road touch the premises in dispute.

1. It is stated in the ·cross-bill and urged in the testimony that it is the custom among civil engineers to use a dotted line to designate a tentative line of road which is subject to change of direction in actual construction. It is not alleged in the pleadings or revealed by the testimony that this alleged custom was in general observance, or that it was known to, O'Connell, or that it was of such general notoriety as to be presumed to be known to him. The testimony fails to disclose that O'Connell knew that the railroad was being constructed across . the premises in dispute. The most that is shown is that after he had sold his timber in that· region to the Livestock Company, in which concern he was the principal, if not the sole owner of stock, the timber on that and adjacent tracts originally belonging to O'Connell was hauled out over the line of road and deposited in a slough adjacent to the Columbia River. For all that appears in the testimony, so far as O'Connell or his· successor in interest is concerned, the logs might have been dragged over a skid road by oxen ‘or snaked out by donkey engines. No one can be estopped in such a case by what happens without his knowledge. The rule is thus stated in *Roberts v. Northern Pacific R. R. Co.,* 158 U. S. 1, 11 (39 L. Ed. 873, 15 Sup. Ct. Rep. 756, 758, see, also, Rose's U. S. Notes):

"So, too, it has been frequently held that if a land owner, knowing that a railroad company has entered upon his land and is engaged in constructing its road without having complied with the statute, requiring either payment by agreement or proceedings to condemn, remains inactive and permits them to go on and expend large sums in the work, he will be estopped from maintaining either trespass or ejectment for the entry, and will be regarded as hav-

ing acquiesced therein, and be restricted to a suit for damages.''

It is true that in the Roberts case the railroad company involved was one possessing the power of eminent domain, while in the case at bar the Lumber Company · constructed the road as a private enterprise; but the principle common to both is that estoppel must be grounded on knowledge of the party to be estopped, respecting the acts of the other party which the former may not gainsay. In the instant case there is no evidence that the owner of the particular tract had knowledge until afterwards that the road had been built upon it, hence there can be no estoppel to challenge its being there.

2, 3. The plaintiffs in the cross-bill, count upon arrangements they made with one Stennick, who purchased the timber from O'Connell or his corporation and was empowered to go upon the premises and take off the timber in any way he chose. The plaintiffs in equity urge that Stennick was O'Con-·nell's agent, but the testimony does not show this in any degree. He was merely a purchaser from O'Connell, privileged to go upon the ground and take away the timber, but he was not in any sense the agent with whom the equity plaintiffs could contract so as to bind O'Connell. The Lumber Company contends that when the Livestock Company bought the land from O'Connell the railroad was there in operation, which put the purchaser on inquiry and was notice to it of the former's rights. All that doctrine amounts to is that the purchaser will be charged with what could be ascertained by reasonable inquiry. In the present juncture, according to the record, search would have disclosed that the Lumber Company, without the knowledge of

O'Connell, had assumed to act with Stennick, who had no authority to bind O'Connell. By the well-settled rules of agency, one who deals with another representing himself to be an agent of a third party sought to be bound, deals at his peril. Yet this is what the Lumber Company did with Stennick.

4. Neither is the evidence sufficient to prove a mistake. The Lumber Company took the initiative by actual visitation upon the land, prepared its plat upon which was designated the line of road, submitted it to O'Connell and had a contract drawn up which complies precisely with that map. No knowledge is imputed to O'Connell of any other line upon which the road should be constructed. There was no mutuality of mistake whatever. Descanting upon the dotted line, indicating as the engineer says, a tentative road, he himself says in effect that this was a mental conception of his own, not communicated to O'Connell, and that he never saw the latter until after the road had been constructed. To be available in the reformation of a contract, the proof of mistake must be clear and satisfactory; and the error must be mutual. No such situation is disclosed by the testimony, and hence the Circuit Court was right in dismissing the cross-bill in equity.

The amended answer of the defendants in ejectment essayed to put in as a defense the matter counted upon in equity as an estoppel. The court refused to allow it to be proved. At the close of the testimony in the trial of the law action, the plaintiff there moved for a directed verdict in its favor according to the prayer of its complaint and that the jury be authorized to assess the damages. This motion was denied, and its refusal constitutes the sole objection on behalf of the ejectment plain-

tiff to the rulings of the court as disclosed by the bill of exceptions.

5. It will be observed that there are two causes of action stated in the complaint—one for the recovery of the possession of the realty, without damages; and the other is a claim for special damages for injury to the freehold. As to the first cause of action, the motion was well taken and should have been allowed, for it is admitted by the pleadings that the plaintiff is the owner in fee simple of the property. This title draws with it and includes the right to the possession of the land, unless something else is shown by the pleadings. It is said in Section 328, L. O. L.:

"The defendant shall not be allowed to give in evidence any estate in himself, or another in the property, or any license or right to the possession thereof, unless the same be pleaded in his answer."

6. As stated, the record shows that in the law action the trial court refused to allow any proof of matter tending to show estoppel, but left it to the jury to say whether the entry of the defendants upon the land was wrongful, holding, in effect, that the matter of estoppel had been determined adversely to the defendants in the litigation upon the cross-bill. Whether this ruling in the law action was erroneous or not is not necessary to be decided, for the defendants have not appealed from the judgment.

7. The case presented on the motion for a directed verdict as to the first cause of action, therefore, is this: The plaintiff is admitted to be the owner in fee simple of the property. No license or other adverse estate has been pleaded, and an estoppel against the ejectment plaintiff has not been proved. Consequently the court should have directed a verdict in

favor of the plaintiff for the possession of the land. The case was submitted to the jury on the question of damages, and a general verdict in favor of the defendants was returned. This is conclusive on the question of fact involved in the claim for damages, and it cannot be disturbed on this appeal. The conclusion of the whole matter is that the cause must be remanded to the Circuit Court, with directions there to enter a judgment for the plaintiff and against the defendants for the recovery of the possession of the land, but without damages.

REMANDED WITH DIRECTIONS.

REHEARING DENIED.

McBRIDE, C. J., and BENSON and HARRIS, JJ., concur.