Argued at Pendleton October 31, reversed and suit dismissed December 13, 1921.

## BOISE–PAYETTE LUMBER CO., a CORPORATION, *v.* THE DOMINICAN SISTERS OF ONTARIO AND GERMAN AMERICAN TRUST CO. ET AL.

(202 Pac. 554.)

Mechanics' Liens — Statutory Requirements must be Clearly Complied With.

1. The right to a mechanic's lien is statutory, and the statutory requirements must be strictly complied with.

Mechanics' Liens—Right to may be Waived.

2. The right to a mechanic's lien may be waived by one entitled thereto.

**Mechanics' Liens—Materialman's Failure to Give Owner Notice of Material Furnished at Instance of Contractor Held Fatal.**

3.  Materialman's failure to give owner written notice of delivery of material for use in construction of building at the instance of the contractor in charge of the construction of the building, within five days after the date of the first delivery as required by Section 10191, Or. L., *held* to defeat creation of lien.

**Mechanics' Liens — Materialman's Notice to Owner Unnecessary Where Material was Furnished at Instance of Owners.**

4.  Materialman would have been entitled to lien for lumber used in the construction of a building notwithstanding failure to give owners written notice of the delivery of the lumber under Section 10191, Or. L., if the lumber had been furnished at the request of the owners.

**Mechanics' Liens—Materialman Seeking to Assert Lien for Material Furnished Without Notice to Owner must Prove Contractor Ordered Material as Owner's Agent.**

5.  Materialman seeking to foreclose lien for lumber furnished without giving owner the written notice required by Section 10191, Or. L., was required to prove that the contractor in ordering the lumber acted as the agent of the owners, and not as a contractor in charge of the construction of the building.

**Principal and Agent — Evidence of Appointment may be Either Direct or Indirect.**

6.  Evidence of the appointment of an agent may be either direct or indirect.

**Principal and Agent—Circumstances, Apparent Relations, and Conduct of Parties Admissible on Issue of Agency.**

7.  The circumstances and apparent relations and conduct of the parties may be shown in evidence on issue of existence of agency.

**Mechanics' Liens—Evidence Held Insufficient to Prove Contractor Ordered Lumber as Owner's Agent.**

8.  In materialman's action to foreclose lien for lumber delivered without giving owner the notice required by Section 10191, Or. L., in which materialman claimed that notice was unnecessary because contractor at whose instance material was furnished ordered material as owner's agent, evidence *held* insufficient to prove such agency.

**Principal and Agent—That One has Assumed to Act as Agent is not Sufficient to Show Agency.**

9.  The mere fact that one has assumed to act as agent is not sufficient to show agency unless his acts are so open and notorious that it is evident that they must be known to the principal and assented to by him.

**Appeal and Error—Case Determined Wholly on the Record.**

10.  Supreme Court will determine the case on appeal wholly upon the record.

From Malheur: Dalton Biggs, Judge.

In Banc.

The object of this suit is the foreclosure of a lien by the plaintiff upon the property of the defendant. Plaintiff Boise-Payette Lumber Company, a private corporation extensively engaged in the manufacture and sale of lumber, conducts a yard at Ontario, Oregon, for the sale of lumber and other building material. The Dominican Sisters, a corporation, defendant herein, conducts a hospital in the City of Ontario, Oregon.

Between the fourth day of February and the thirteenth day of June, 1918, the plaintiff, at the instance of one William Kercher, delivered upon the premises of The Dominican Sisters of Ontario, certain building material which was used by Kercher, the contractor in charge, in the construction, for the defendant, of a building called "St. Joseph's Home for Old People."

The testimony of the parties thereto shows that the contract made between the defendant The Dominican Sisters, and William Kercher, for the construction of the building, was both oral and written. The writings are as follows:

"Ontario, Oregon.

"This agreement made and entered intó this 14th day of March, 1918, by and between The Dominican Sisters and William Kercher for the construction of St. Joseph's Home, to be built in Villa Park Addition to the Hospital, the said house to be built in a good and workmanlike manner according to plans and specifications. For doing above work The Dominican Sisters do agree to pay to William Kercher the sum of $2,800. The building will be finished May 15th and the last payment of $500 will be paid on that date.

"(Signatures.)"

Accompanying the above writing is a paper entitled, "Specifications and Contract for the Erection of St. Joseph's Home," which relates to the excavation, foundation, studdings, porches, walls, roof, stairway, inside trimmings, doors and windows, plaster and electric wiring.   Then follows this language:

"All above-mentioned work to be done first-class for the sum of $2,500.00."

Next comes an enumeration of matters denominated "extras, $300." Indorsed on the contract are the words, "All complete for $2,800." These writings were executed several weeks after the beginning of the furnishing of the material and the work of construction.

The testimony offered by the defendant is to the effect that Kercher agreed to construct the building and furnish all material other than heating and plumbing, for the sum of $2,800, while Kercher claims that he was to receive $2,800 for the construction of the building, and that the defendant was to furnish not only the heating and plumbing, but also the lumber. The testimony was taken not before the court, but by a stenographer at Ontario, Malheur County, Oregon, and thereafter transcribed and the proof submitted to the court in which the cause was pending.

The court made findings of fact and conclusions of law, and, based thereon, decreed the foreclosure of plaintiff's lien. Defendant appeals, assigning error as follows:

"In making Findings No. 3, 4, 5, 6, 7, 9, 11, 12; and that the court committed error in finding Conclusions No. 1, 2, 3, 4, 5, and in rendering any judgment or decree for plaintiff."

REVERSED AND SUIT DISMISSED.

For appellant there was a brief over the names of *Mr. P. J. Gallagher* and *Mr. W. H. Brooke,* with an oral argument by *Mr. Gallagher.*

For respondent there was a brief over the names of *Mr. A. A. Fraser* and *Mr. Wm. E. Lees,* with an oral argument by *Mr. Fraser.*

BROWN, J.—At the beginning, we shall observe that we are not deciding whether the defendant is liable to plaintiff in an action at law for the building material furnished by plaintiff and used in the construction of St. Joseph's Home for Old People. The matter before us for consideration involves the single question of plaintiff's right to a statutory lien provided for by Section 10191, Or. L., reading in part as follows:

"Every * * lumber merchant * * furnishing material * * to be used in the construction * * of any building * * shall have a lien upon the same for the * * material furnished at the instance of the owner of the building * * or his agent; and every contractor, subcontractor, architect, builder or other person having charge of the construction * * of any building * * shall be held to be the agent of the owner for the purpose of this act; provided, that every person * * or corporation furnishing material * * to be used in the construction of any building * * shall, not later than five days after the date of the first delivery to any contractor or agent, of such material or supplies for which a lien may be claimed, deliver or mail to the owner of the property * * upon * * which said material * * is to be used, a notice in writing, stating in substance and effect that such person * * has commenced to deliver material * * for use thereon, with the name of the contractor or agent or other person ordering the same, and that a lien may be claimed for all material furnished by

such person * * for use thereon.   No materialman's lien for material * * furnished to the contractor or the agent of any owner * * shall be enforced unless the above provisions of this act have been complied with.''

1, 2. The last sentence in the section quoted emphatically declares that no lien for material shall be enforced unless its provisions have been complied with.   Hence, no claim for material furnished at the instance of the contractor in charge is enforceable by lien, unless a notice which complies with the commands contained in this section has been served upon, or mailed to, the owner.   The right to assert and perfect a mechanic's lien is a statutory privilege: *Brown* v. *Harper,* 4 Or. 89.   This privilege may be exercised or waived, as the lienor may prefer: *Hughes* v. *Lansing,* 34 Or. 118 (55 Pac. 95, 75 Am. St. Rep. 574).   The right to a lien being purely of statutory creation, whatever the statute makes necessary to its existence must be done, and one claiming the benefit of that statute must bring himself clearly within its terms: *Gordon* v. *Deal,* 23 Or. 153 (31 Pac. 287); *Curtis* v. *Sestanovich,* 26 Or. 107, 119 (37 Pac. 67).   We quote with approval from the case of *Pilz* v. *Killingsworth et al.,* 20 Or. 432, 435 (26 Pac. 315), wherein this court said:

''The right to a lien is in derogation of the common law, and can only be established by a clear compliance with the requirements of the statute.   The right is conferred by statute, and the party claiming such lien must show a substantial compliance with the statute * * : *Allen* v. *Rowe,* 19 Or. 188 (23 Pac. 901); Kneel Mech. Liens, 221.''

That provision of the Code enacted for the protection of materialmen was amended by Chapter 185, General Laws of Oregon, 1915, for the express pur-

pose of affording protection to the owners of property against willful or careless contractors. The statute yet preserves the materialman's right to a lien, but, under conditions as they exist in the instant case, imposes upon him the duty of notifying the owner of the real property subject to a lien, of the material furnished the contractor in charge to be used in the construction of any building erected thereon.

In *Auld* v. *Starbard*, 89 Or. 284 (173 Pac. 664), this court, speaking through Mr. Justice MOORE, said:

"Chapter 185, General Laws of Oregon, 1915 (Section 10191, Or. L.), was evidently patterned after an act of the legislative assembly of the State of Washington * * . Where a statute, after having been construed by the court of last resort in the state where the law was enacted, is adopted in Oregon, the interpretation thus given, though not binding upon the courts of this state, affords persuasive argument that it should be followed here."

In *Finley et al.* v. *Tagholm et al.*, 60 Wash. 539 (111 Pac. 782, 783), Mr. Justice CHADWICK, speaking for the court, said:

"It is contended that the statute should be construed not strictly, but liberally, in order to secure liens for materialmen and laborers * * . The answer to this argument is that the statute requires no construction. Its terms are plain and its object evident. The law is that a duplicate statement shall be delivered or mailed to the owner * * at the time the material is delivered to the contractor * * , its purpose being not so much to insure a right of lien as to protect property owners against dishonest contractors."

3. According to the testimony of William Kercher, he was the contractor in charge of the construction of the building in which the material furnished by plaintiff was used. The testimony offered by the

defendant shows that Kercher was the contractor in charge of the construction of that building. The letter addressed by Chance, the agent of the Boise-Payette Lumber Company, treats Kercher as the contractor in charge. He being the contractor in charge of the construction of St. Joseph's Home for Old People, and having procured, at his own instance, the material to be delivered for its construction, there can be no doubt that plaintiff was bound to serve a notice upon the defendant, as required by the statute under which it claims a remedy. The notice required to be served should be in writing, stating in substance and effect that the plaintiff has commenced to deliver material for use in the building under construction, with the name of the contractor or agent or other person ordering the same, and that a lien may be claimed for all material furnished by the plaintiff for use thereon.

The plaintiff, having failed to comply with the statutory provision requiring notice of lien, has sought to bind the defendant as the purchaser of the material, through Kercher as its purchasing agent. In brief, the plaintiff asserts a sale to the defendant. The question then presented by this claim is one of fact only as to whether the material was furnished at the instance of defendant. Under a like statute in the State of Washington, the Supreme Court of that state has held in a number of cases, that when material is furnished upon the order of the owner, no notice is required: *Rieflin* v. *Grafton*, 63 Wash. 387 (115 Pac. 851) ; *Architectural Decorating Co.* v. *Nicklason*, 66 Wash. 198 (119 Pac. 177) ; *Hewitt-Lea Lumber Co.* v. *Chesley*, 68 Wash. 53 (122 Pac. 993) ; *Brace & Hergert Mill Co.* v. *Burbank*, 87 Wash. 356 (151 Pac. 803, 809,

Ann. Cas. 1917E, 739); *Spokane Valley Lbr. & Box Co.* v. *Dawson et ux.,* 94 Wash. 246 (161 Pac. 1191).

4. Had the testimony in the instant case established that the lumber was furnished to the defendants at their own instance, we should not hesitate to hold that the plaintiff is entitled to a lien. The testimony of the defendant's representatives is to the effect that they did not purchase the lumber, and, further, that they did not authorize any person to purchase it for the defendant. That Kercher was a contractor for the construction of the building, and that he requested plaintiff to deliver the lumber and other building material upon the premises of the defendant, is proved beyond question. The testimony of the plaintiff is to that effect. Plaintiff does not pretend that it had any communication with the defendant, or with any of its officers, prior to the delivery of the material. It bases its right to a lien upon the assumption that Kercher was the agent of the Hospital with authority to bind his principal in the matter of the purchase of the building material. Plaintiff attempts to prove the agency of Kercher by his own declarations. It seeks to bind the defendant by Kercher's acts, without first showing his authority. Plaintiff's agent, who made the sale to defendant, gave the following testimony on cross-examination, concerning the sale and delivery of the lumber:

"Q. Now, Mr. Chance, you never did have any transactions with any member of the hospital community up here before this lumber was delivered at all, did you, directly?

"A. No, sir.

"Q. Who brought the estimate to you?

"A. Kercher.

"Q. And you figured the estimate for him?

"A. Figured it to Mr. Kercher for the Holy Rosary Hospital.

"Q. Kercher came to your office for figures on lumber for a proposed building?

"A. Yes, sir.

"Q. And you figured it?

"A. Yes, sir.

"Q. And gave him the figures?

"A. Yes, sir.

"Q. And he afterwards told you it would be all right?

"A. Yes, sir.

"Q. And you started delivering lumber?

"A. This estimate was made out to the Holy Rosary Hospital, giving materials and prices

"Q. And you handed that to Kercher?

"A. Yes, sir.

"Q. Now, up to that time you never talked to any of the Sisters with reference to the sale of this lumber yourself, had you?

"A. No, I had not.

"Q. You had no business transactions with anybody but Kercher?

"A. No, sir, I never had been to the Hospital.

"Q. And Kercher told you when to deliver the lumber and the various kinds and grades?

"A. He did.

"Q. As a matter of fact Kercher handled the entire end of the deal for the Hospital * * ?

"A. He did * * .

"Q. Now, what is your knowledge of this case? Were you dealing direct with Kercher or dealing with the Hospital, which one?

"A. Well—I—the way I feel about it is, I was dealing with Kercher as agent for the Hospital."

In answer to leading questions put by counsel on direct examination, William Kercher testified that he had a contract with The Dominican Sisters for the construction of the building, and that he was to fur-

nish everything except the lumber, plumbing and heating. Answering the following questions, he said:

"Q. It was never understood by you or the Boise-Payette Lumber Company that you were to pay for it [lumber described in lien]?

"A. No, sir.

"Q. When you went to the Boise-Payette Lumber Company to obtain estimates and prices, you went there simply at the request of The Dominican Sisters?

"A. I did.

"Q. And obtained prices and looked after it simply as their messenger or agent?

"A. I did."

Witness further testified, concerning the contract and the specifications introduced into the record as evidence, that:

"This whole contract and this specification did not have anything to do with this building at all. The agreement about this building was made between the Mother Superior and me and she did not want anybody present, and later on when the Sisters kicked about her agreement with me, then she came around with specifications and contracts just to have them quieted, she said. That was all it was for.

"Q. This contract Mr. Lees introduced in evidence has nothing to do with this building at all?

"A. No, sir.

"Q. Then the only contract you worked on was the oral agreement between you and Mother Superior?

"A. Yes, sir * * .

"Q. The only bill you ever took to the Mother Superior was at the time you were stopped from working on the building there, was it not?

"A. Yes, sir.

"Q. And that is the only knowledge she had that you had the lumber charged to her?

"A. No, sir, I do not think so."

The testimony of Mother Superior and of the two Sisters negatives any authority reposed in Kercher

to buy building material for defendant, or to have the same charged to its account.

5-8. In order to entitle plaintiff to a lien by reason of the alleged sale of the building material to the Hospital, it was incumbent upon it to prove that Kercher was the agent of the defendant. The law of agency applicable to this case is well established. Whether Kercher was the agent of the Hospital for the purpose of purchasing the lumber is purely a question of fact, and the burden of proof of such agency is upon the plaintiff for the reason that it affirms the relation of principal and agent existing between the defendant and Kercher. There are many ways in which agency may be created, and the evidence of appointment may be either direct or indirect. Hence, the circumstances and apparent relations and conduct of the parties may be shown in evidence. But the conduct of the parties, and the circumstances in the case at bar do not establish that Kercher was authorized to purchase lumber upon the account of the Hospital.

9. A well-established principle is:

"The mere fact that one has assumed to act as agent is not sufficient to show the relation, unless his acts are so open and notorious that it is evident that they must be known to the principal and assented to by him." 1 Am. & Eng. Ency. of L. (2 ed.), 968, 969.

3 Bouvier's Law Dictionary, 99, 2687, 2688, gives the following definition of agency:

"Agency is a relation between two or more persons, by which one party, usually called the agent or attorney, is authorized to do certain acts for, or in relation to the rights or property of, the other who is denominated the principal, constituent, or employer * * . The agent is one who undertakes to transact some business or to manage some affair, for another,

by the authority and on account of the latter and to render an account of it. * .* The term is one of a very wide application.''

In *Pacific Livestock Co.* v. *Portland Lbr. Co.,* 96 Or. 567, 574 (189 Pac. 893), Mr. Justice Burnett said:

''By the well-settled rules of agency, one who deals with another representing himself to be an agent of a third party sought to be bound, deals at his peril.''

In *Toomey* v. *Casey,* 72 Or. 290, 295 (142 Pac. 621), this court, speaking through Mr. Justice Bean, said:

''Before the acts of an agent can be shown as against his principal, the agency must be proven. * * The authority of an agent cannot be proven by the alleged agent's own statements or acts, unless it be also shown that the principal knowingly acquiesced therein: *Connell* v. *McLoughlin,* 28 Or. 230 (42 Pac. 218); *Sloan* v. *Sloan,* 46 Or. 36, 39 (78 Pac. 893); *Wade* v. *Amalgamated Sugar Co.,* 65 Or. 488 (132 Pac. 710); *Harding* v. *Oregon-Idaho Co.,* 57 Or. 34 (110 Pac. 412, 415).''

In *Hinton* v. *Roethler,* 90 Or. 440 (177 Pac. 59), Mr. Justice Harris held that,—

''A person is not liable on a contract executed by another in his behalf, unless he previously authorized or subsequently ratified act.''   Syllabus.

10. Counsel for appellant, in their brief, go outside of the record for the purpose of casting reflection upon the integrity of one of plaintiff's witnesses. Such practice can benefit nobody. In this court, cases are heard and determined wholly upon the record.

For the reason stated in the foregoing opinion, the decree will be reversed and the suit dismissed.

Reversed.   Suit Dismissed.